## WILSON vs. SULLIVAN.

1. All charges, allegations and averments contained in regular pleadings addressed to and filed in a court of competent jurisdiction, which are pertinent and material to the redress or relief sought, whether legally sufficient to obtain it or not, are absolutely privileged. However false and malicious, they are not libellous. This privilege rests on public policy, which allows all suitors (however bold and wicked, however virtuous and timid,) to secure access to the tribunals of justice with whatever complaint, true or false, real or fictitious, they choose to present, provided only that it be such as the court whose jurisdiction is invoked has power to entertain and adjudicate. The alleged libellous matter in the present case, being contained in a bill praying for an injunction, was relevant and material; consequently, absolutely privileged.

2. The court of equity had jurisdiction to entertain an application for injunction, but the court of law that rendered the judgment sought to be enjoined had none. Neither did the latter court have power to set aside the judgment for perjury in its procurement (the ground for injunction urged in the bill), no conviction of perjury having taken place.

3. A plea to the action for libel, justifying the words as true to the best of defendant's knowledge and belief, was no waiver of the privilege. The plea did not render words libellous which were not so when the action was brought.

May 23, 1888.

Libel. Privileged communications. Public policy. Pleadings. Jurisdiction. Perjury. Before Judge BOYNTON. Pike superior court. April term, 1888.

J. W. Sullivan brought his action for libel against Cyrus R. Wilson, for publishing the bill in equity set out in the decision, by presenting the same to a notary public before whom it was sworn to, and to the chancellor. The charges against Sullivan therein contained were alleged to be false and malicious, and it was further alleged that the bill was not procured, signed and sworn to by Wilson with the honest intention of asserting any legal right, but to vent his spleen and malice, with the hope of shielding himself behind the privilege

which is accorded to suitors who in good faith prosecute their rights, and with the malicious intent to damage petitioner.

The defendant demurred generally, and on the following two special grounds:

(1) That the matter charged as libellous is protected as a privileged communication, and as made in a proceeding in court.

(2) That to allege in a bill charging perjury that orator is also informed that Sullivan approached two parties, to wit, Dewberry and Wright, and offered them a consideration to testify in his behalf, is not libellous, the same being done in a legal proceeding.

The demurrer was overruled; and after trial, the jury found for the plaintiff $500. On refusal of his motion for a new trial, the defendant excepted.

This statement, with the decision, completes the report.

T. R. MILLS, F. D. DISMUKE and J. F. REDDING, for plaintiff in error.

JOHN I. HALL, E. W. HAMMOND, J. D. STEWART and A. M. SPEER, *contra.*

BLECKLEY, Chief Justice.

The alleged libellous matter on account of which this action was brought was contained in a sworn bill filed by Wilson against Sullivan, to obtain an injunction against the sale of Wilson's property, the same being levied upon under an execution in favor of Sullivan against Wilson and another. In order that the case may be fully understood, the whole bill is set out in this opinion, and is as follows:

"STATE OF GEORGIA,—Pike County. In the superior court of said county. To the Hon. John D. Stewart, judge of the superior court of said county:

"Humbly complaining showeth unto your honor your orator, C. R. Wilson, that at the October term of the superior court of said county, there came on to be heard a certain matter wherein J. W. Sullivan of said county was plaintiff, and Thomas Herbert, a colored man, was defendant, and your orator as security for said Herbert. And your orator further showeth that at the hearing of said cause, by means of the corrupt and false statements and testimony then and there given to the jury in said case by plaintiff in said action, a verdict was rendered in favor of said plaintiff against said Tom Herbert as principal, and your orator as security, for a large sum of money, to wit, ninety dollars or other large approximate sum. And your orator further showeth that by virtue of the judgment in said cause, W. P. Bussey, as sheriff of said county, under an execution issued from said court, has levied upon certain property of your orator described in the return made on said execution, and will sell the same, unless prevented by your honor's injunction, on the first Tuesday in March, 1884. And your orator showeth unto your honor that the said judgment is a nullity, being founded entirely upon a fraud practiced on said court and jury, having been procured by the false and corrupt testimony of said J. W. Sullivan. And your orator further showeth that at the same term of said court, the grand jury of said county did, for and on account of said testimony given by said Sullivan in said court, find a true bill of indictment for the crime of perjury against said Sullivan; and your orator is advised that no action was had or taken on such bill of indictment so found and reported, for some cause unknown to your orator, but which your orator prays may be enquired into by your honor and a jury of said county.

"And your orator further showeth that, since the said term of the said court, and since the said levy of the execution upon the property of your orator, he has been voluntarily and freely approached, without solicitation on your orator's part, by two respectable citizens of said county, to wit, Squire Wright and Washington Dewberry, of whose testimony he was not aware previous to said trial or said levy; and has been informed by said parties that, prior to said trial, the said Sullivan did approach them, the said Wright and the said Dewberry, and knowing them to be poor and needy, did attempt to bribe them, the said Wright and Dewberry, and did make to each of them a proposition to perjure themselves for a consideration, as follows, to wit: that if they, the said Wright and Dewberry, would attend the said court at the said October term thereof, and confirm the testimony of the said Sullivan, he, the said Sullivan, would give to each of said parties one dollar and fifty cents each for every day's attendance, and would pay the hotel board of said parties, and furnish to each of the said parties all the whiskey he could drink.

"And your orator further showeth that he cannot avail himself of legal remedy against such execution being enforced upon his property, as he is advised that an affidavit of illegality will not lie, even for fraud and perjury, against a judgment solemnly rendered; and that his only redress is in a court of equity, where such matters are properly heard and determined.

"And your orator expressly waives all manner of discovery from the defendant touching the various matters here charged against said J. W. Sullivan.

"And your orator prays that the State's writ of injunction may issue directed to the said J. W. Sullivan and the said W. P. Bussey, as sheriff of said county, restraining the said Sullivan and the said sheriff from further proceeding with the enforcement of said execution, and commanding and enjoining the said sheriff against selling the property of said orator at the March sales, 1884, of said county, and until the further order of said court. And your orator prays that your honor will grant such other and further relief in the premises as to your honor may seem proper. And your orator prays that said J. W. Sullivan and the said W. P. Bussey, as sheriff as aforesaid, be and appear at the April term, 1884, of said court, to stand to and abide such order and decree as may be made in the premises. And your orator will ever pray, etc.

"F. D. DISMUKE, T. R. MILLS, complainant's solicitors."

The bill was sworn to by Wilson on the 21st of February, 1884.

The alleged libel consists in the imputation to Sullivan of the crimes of perjury, and attempting to bribe or suborn witnesses to commit perjury. The allegations of the bill upon both these topics, though upon the former they are much less specific than they should be, are all pertinent to the object for which the bill was filed. They come up to any sound test which has ever been laid down in England or America, so far as· we know, touching the privilege of pleading. They constitute matter of absolute, unconditional privilege, according to all authorities, because they are both relevant and material to the object contemplated by the bill. In connection with the necessary details as to the matter of Sullivan's testimony, the fact that he testified falsely,

and the fact that he attempted to suborn witnesses to corroborate his false testimony, would in reply to him have been admissible evidence in the original case, the one in which he testified, and had they been proved to the satisfaction of the jury which determined that case, the verdict might have been the reverse of what it was, and the judgment which the bill sought to enjoin might never have been rendered. And as to the injunction applied for by the bill, if these facts were not material and relevant, the bill contained nothing that was, for the whole stress of the bill was upon them. They constituted the entire basis upon which it rested. The case made was one in which the complainant sought relief by injunction against a judgment procured by the false and corrupt testimony of the plaintiff in that judgment, because of such perjury and because of newly-discovered evidence (to wit, an attempt to suborn witnesses,) tending to prove the perjury. Unless it can be said that a whole bill is irrelevant to itself, these facts are relevant; unless it can be said that a whole bill is immaterial to its own structure, these facts are material. They are not only material, but the most material which the bill contains. True, they are not legally sufficient, especially as the bill does not set out in what the false testimony consisted, nor show that the judgment or verdict could not have been obtained without it. *Richardson vs. Roberts*, 25 *Ga.* 671. But that the bill lacked sufficiency either in substance or fullness did not deprive it of privilege, the very object of the privilege being to allow unstinted opportunity to take the opinion of the court upon questions of sufficiency as well as all others arising in the cause. It is not necessary that a bill shall be able to withstand a demurrer, general or special, in order that the matter it contains, though false and malicious, shall not be libellous. On the contrary, if brought in

the proper court, it stands clear of the law of libel, save as to such of its matter as is irrelevant or immaterial. A weak bill enjoys precisely the same immunity as a strong one; before the law of libel they are equals. On the general subject of privilege, and particularly on the absolute protection of pleadings in judicial proceedings, see Starkie on Slander, *246 *et seq.*; Townshend on Slander and Libel, 381; Odgers on Libel and Slander, 191. Our code, in section 2980, enumerates various instances of conditional privilege, but deals not at all with unconditional or absolute privilege. This is shown clearly by the next section, which declares that "in every case of privileged communications, if the privilege is used merely as a cloak for venting private malice, and not *bona fide* in promotion of the object for which the privilege is granted, the party defamed has a right of action." The characteristic feature of absolute, as distinguished from conditional, privilege is, that in the former the question of malice is not open; all inquiry into good faith is closed. And in testing pleadings, the marks of absolute privilege are relevancy and materiality. Where these are wanting there is no privilege, or only conditional privilege at most. The code does not mention pleading as a class or instance of privilege, and unless it had done so, we cannot suppose that it meant to change the prior law concerning it. The terms "every case," in the section we have quoted, are to be construed, every case of conditional privilege, that is, such privilege as the preceding section deals with.

Generalizing the law of the matter, as we understand it, and applying the same to this case, we hold as follows: All charges, allegations and averments contained in regular pleadings addressed to and filed in a court of competent jurisdiction, which are pertinent and material to the redress or relief sought, whether legally suf-

ficient to obtain or not, are absolutely privileged. However false and malicious, they are not libellous. This privilege rests on public policy, which allows all suitors (however bold and wicked, however virtuous and timid,) to secure access to the tribunals of justice with whatever complaint, true or false, real or fictitious, they choose to present, provided only that it be such as the court whose jurisdiction is invoked has power to entertain and adjudicate. The alleged libellous matter in the present case, being contained in a bill praying for an injunction, was relevant and material; consequently, absolutely privileged. *Francis vs. Wood*, 75 *Ga.* 648.

The remedy for one who has been harassed by a malicious and groundless suit, where there is any remedy, is not an action for defamation, but for bringing and prosecuting the suit maliciously and without probable cause. The general rule, however, is, that every one may appeal at his own will to the public conscience without incurring any responsibility save for costs. Courts are the conscience of the State. This being a sworn bill, the complainant, besides being liable for costs, was subject to a prosecution for perjury. *Francis vs. Wood, supra.*

2. The declaration alleges that the chancellor had no jurisdiction or authority to entertain, hear or determine the issue made by the bill, the same being cognizable by the court of law which rendered the judgment. If this means a denial of jurisdiction in a court of equity, or in the chancellor as the organ of that court, to grant an injunction against the enforcement of a judgment rendered by a court of law, it is certainly a very unsound position. That such injunctions have been constantly granted every lawyer knows. The most ample power to grant them, to say nothing of other authority, is found in the code, §§247, 3210, 3218, 3220. What the

declaration really means, no doubt, is that the bill did not state a good case for injunction; and that is true; but the test of jurisdiction to entertain a bill for injunction is not whether good cause for granting the injunction is set forth in the bill, but whether the court or its organ, the judge, could grant it for any cause. If the tribunal applied to can grant the injunction for any cause, then any question about cause is not a question of jurisdiction, but of the proper exercise of jurisdiction. An injunction granted without jurisdiction is void, but one granted by a competent tribunal for insufficient cause, though erroneous, is valid and binding until vacated or set aside. There can be no doubt that the court of equity in which this bill was filed had jurisdiction to entertain and adjudicate it, and that the judge, as chancellor, had full power to grant the interlocutory or *ad interim* injunction prayed for. And it is certain that the court of law which rendered the judgment had no power to grant an injunction at all. Since this bill was filed a statute has been passed conferring such power, but that statute is not relevant to the present inquiry. Neither could that court, consistently with the law of the land, have set aside the judgment because it was the result of perjury, the witness not having been convicted. Code, §§3591, 4467. Not only did the court of equity have jurisdiction to entertain the bill and grant the special relief prayed for, but it had the sole and exclusive jurisdiction. It follows that there was no absence of absolute privilege on account of any defect in the jurisdiction of the court in which the bill was filed, and to the judge of which it was addressed. That the address was proper, see code, §4175.

3. There were three pleas: (1) not guilty; (2) that the words alleged to be libellous are to the best of the defendant's knowledge and belief true; (3) that the words

were used by the defendant in judicial proceedings, to show that the plaintiff was not entitled to enforce against the defendant the judgment mentioned in the bill; that the defendant had received, before making the allegations in the bill, information which justified him in making the charge complained of; and that he used the words in said judicial proceeding in good faith and without malice, and that the same were never published by him unlawfully or otherwise.

It will be noticed that the so-called plea of justification (which is the second) is only to the extent of the best of the knowledge and belief of the defendant. He does not undertake anywhere to justify, absolutely, the charges in the bill as true; and if he did, we do not know that that would cause the loss of his privilege. If these words when used were absolutely exempt from all responsibility for malice, whatever might have been their truth or falsehood, it is not easy to see how re-affirming them in this action, which because of the privilege is not maintainable, would render them actionable. If they were not actionable when the action was brought, we do not see how they could become actionable by justifying them, however absolutely it might be averred now that they were true. Attending this averment in the same answer, if not in the same plea, is the claim of privilege. There is no renunciation but an express claim of it. We think the action is not to be upheld on any theory that the privilege was waived by this so-called plea of justification. Furthermore, the privilege of defence is as broad as the privilege of suit or complaint.

This is all we deem it necessary to decide in the case. It goes to the vitals of the action; and the court erred in not granting a new trial, because the verdict was contrary to law and without evidence to support it. The truth is that when the bill was introduced by the

plaintiff, it then became obvious that the action could not be maintained. There might be some doubt about it on the declaration, and possibly the court was right in not sustaining the demurrer, but when the bill came in and it could be seen what it was, all together, with no separation or mutilation of its parts, it became perfectly certain that the matter complained of in the declaration was absolutely privileged.

Judgment reversed.