## ATLANTA NEWS PUBLISHING COMPANY *v.* MEDLOCK,
### by next friend (three cases).

1. A writing containing a statement that a person had been "bribed" to testify as a witness against one party and in the interest of his adversary imputes to such person the crime of perjury, and is libelous.
2. The privileged communications recognized in the law of slander and libel as freeing the speaker or writer from liability are of two classes, the one where the privilege is absolute, and the other where the privilege is conditional.
3. "The characteristic feature of absolute, as distinguished from conditional, privilege is that in the former the question of malice is not open; all inquiry into good faith is closed."
4. In every case of conditional privilege, if the privilege is used merely as a cloak for venting private malice, and not bona fide in promotion of the object for which the privilege is granted, the party defamed has a right of action.
5. An attorney at law has a conditional privilege to make, during the progress of a trial, such fair comments on the circumstances of the case and

the conduct of the parties in connection therewith as in his judgment seem proper.

6. Ordinarily the publisher of a newspaper has no privilege as to what appears therein, but is liable for the same as any other person.

7. The publisher of a newspaper is, however, authorized to publish a fair and honest report of the proceedings of a judicial trial; and is not liable on account of such publication, in the absence of express malice. And this is true although what appears in such report as a part of the comments of counsel would have been slanderous if uttered under other circumstances by the attorney.

8. Where a publication is made in a newspaper, of the proceedings of a judicial trial, in which appear what purport to be the remarks of counsel, made during the progress of the case, which are slanderous in their nature, and such remarks were not in fact made by the counsel, the publisher is liable in an action of libel to the party aggrieved.

9. There was no error in overruling the general demurrers to the petitions.

10. Those portions of the petitions which were made the subject of special demurrers were allegations which were permissible as matter of inducement or aggravation, or by way of innuendo, and therefore were properly embraced within the pleadings, and were not subject to the objections taken in the demurrers.

Argued June 24,—Decided August 3, 1905.

Actions of libel.   Before Judge Reid.   City court of Atlanta. November 18, 1904.

Three Medlocks, aged respectively 13, 14, and 15 years, brought their separate suits for libel against the Atlanta News Publishing Company, a corporation.   The petitions in the three cases were substantially the same, and were in substance as follows: The defendant publishes a newspaper known as the Atlanta News, which claims a circulation of nearly 25,000.   On August 23, 1902, Mrs. Moxley, an aunt of the plaintiffs, brought suit against the Georgia Railway and Electric Company, seeking to recover damages for two injuries which she claimed to have received while a passenger upon a car of that company, one on June 11, 1902, and the other on July 15.   The plaintiffs were present when Mrs. Moxley was hurt on the latter occasion, and were subpoenaed as witnesses by the railway company, and testified in the case, honestly and fairly relating what happened on the occasion in question.   After they had testified, and before the case was concluded, on January 22, 1904, the defendant published in its newspaper the following article:

"BRIBERY IS CHARGED TO RAILWAY COMPANY.

"Prominent Attorney in Speech says Witnesses are Bribed.

"A sensational charge of bribery was laid against the Georgia Railway and Electric Company by Colonel W. P. Andrews in the second division of the City Court this morning. The case of Mrs. Louise E. Moxley against the railway company for $12,000, for alleged personal injuries, was on trial, when Colonel Andrews, Mrs. Moxley's attorney, made several sensational statements in his speech to the jury. Mrs. Moxley claims to have been injured some months ago while in the act of alighting from the car. She claims that it has affected her nervous system greatly, as well as her physical condition. She is unable to walk, and is rolled about in a chair. The Georgia Railway and Electric Company brought three children into court to testify that Mrs. Moxley had suffered all her life from the troubles alleged to have been received from the injury; and Colonel Andrews stated that they had paid these children $2 each to come into court as witnesses. The Georgia Railway and Electric Company put two dollars into the palms of these little children and dragged them here into court after having Mr. Simmons talk with them for an hour, and knowing full well what they were going to say before they came here, said the attorney. Colonel Andrews stated that the defendant company had gone to see three little children, Carrie Medlock, 13 years old, Mary Medlock, 16 years old, and Wood Medlock, 15 years old, the nieces and nephew of the plaintiff, and bribed them to testify against her and in the interests of the company. Some allusion to this alleged bribery was made in the argument yesterday, and Attorney Ben Conyers for the railway company admitted that they had paid the witnesses two dollars each. Colonel Andrews says: 'When they pay them this money they expect value received, and the value received in this case is bought testimony. They make these little children as corrupt as the fountains of hell.' The attorneys for the railway company did not reply to these charges in the court-room."

It is alleged that the article is a false and malicious defamation in writing, tending to expose the plaintiffs to public hatred, contempt, and ridicule; that the charges and intimations there set forth were made maliciously; that the attorney for Mrs. Moxley was president of the defendant company, was present during the

entire trial, and well knew that no such charges or accusations as set out in said article had been made against the plaintiffs; that the effect of the article was to create the impression upon the minds of the readers that the plaintiffs had been bribed by the railway company to testify falsely, and that they had for a money consideration so testified; that the article in effect charges that the plaintiffs had made a corrupt bargain to testify falsely and had carried the same into effect; that the plaintiffs are the witnesses referred to in the article, and the defendant, by its publication, did declare to the public that its president, the attorney for Mrs. Moxley, had in open court charged that the plaintiffs had given "bought testimony," and that the railway company had made them "as corrupt as the fountains of hell;" that the publication was false and malicious; that no such charges were in fact made by the attorney, and the defendant, through its president, who was such attorney, well knew this fact, and the motive of the article was to defame the plaintiffs and expose them to public hatred, ridicule, and contempt. The defendant filed a demurrer in each case, containing numerous grounds, among others, that the petition does not set forth a cause of action; the words alleged are not libelous per se; if they can be so construed, they show upon their face that some one other than the plaintiffs was libeled; they do not purport to be a statement or declaration of the defendant, but merely of an attorney in argument before the jury in a case in court, and are consequently not libelous; they are nothing more than the comments of counsel in the discharge of his duty as such, and are therefore absolutely privileged, both as to the attorney who made them and the defendant who printed them. The demurrer also contains numerous objections to stated paragraphs of the petition, which are not necessary to be here referred to. The court overruled the demurrers, and the defendant excepted.

*Andrews & Skeen* and *Dorsey, Brewster & Howell,* for plaintiff in error. *John L. Hopkins & Sons, Rosser & Brandon,* and *Walter T. Colquitt,* contra.

COBB, J. Viewed in any light, the writing was libelous. It was none the less a libel upon the plaintiffs because it was a libel upon the railway company. The defendant in effect charged that the railway company had corruptly influenced the plaintiffs to

give false testimony, and that they had yielded to this influence. To the mind of any reader, of even less than average intelligence, the writing contained a charge that the plaintiffs had been guilty of perjury, and perjury of the most vicious character, that is, perjury brought about by the acceptance of money. The writing must be taken in that light in which it would appear to the ordinary reader of a public gazette. It does not contain all of the technical niceties of a common-law indictment; nor does it contain all that would be necessary in an accusation under the modern liberal rules in criminal pleading; but the reading public are not special pleaders, and the impression conveyed to the mind of the average public reader is that which is to be sought for in determining whether a writing is libelous in its nature. There can be no two opinions as to the impression which would be conveyed to the mind of any moderately intelligent reader of any age or sex, who was accustomed to peruse the columns of a daily paper, as to what was the charge against the plaintiffs contained in this writing. They were held up by this article before the public gaze as youths of vicious natures, willing to act in utter disregard of all rules of decency, honesty, and propriety, having actually appeared in court and knowingly testified falsely for a money consideration. But it is said that the words "they make these children as corrupt as the fountains of hell," while senseless, are not libelous. It is claimed, that this language is absolutely meaningless; that no rational meaning or inference can be drawn from it; that there is no such thing as a "fountain of hell," and, if there is, there is nothing upon which to base a conception whether it is corrupt or not; that the popular idea of a hell is a place of fire and brimstone, and there is nothing corrupt in either of these elements. There are those in the present day, who, for reasons satisfactory to themselves, contend that there is no such place as hell; but even this class will admit that, if there is such a place, there is nothing there which is consistent with honesty, decency, or the right conception of things. Both the popular and the theological idea of hell has nothing in it to make any connection with that place either desirable or comfortable from a physical or spiritual point of view. The word 'hell' is a synonym for all that is evil and corrupt in the grossest and basest sense of those terms. But even if these words did not

convey to the ordinary mind that these children had been, by the alleged corrupt influences, made as vicious as imps of hell, the writing bore the meaning above referred to; and denounced them to the public as being guilty of base and corrupt perjury.    Taken alone, the words " corrupt as the fountains of hell" may be meaningless, but when read in connection with the entire article, there can be no doubt that it bore the meaning above referred to, and was of such a character as to hold the plaintiffs up to public hatred, contempt, and ridicule.

But it is said that the article was merely a report of a trial containing the comments of counsel during the progress of the case, and that what was contained in the article was a privileged communication, both as to the counsel and the publisher.    From motives of public policy the law recognizes certain communications and publications as privileged.    The privilege which the law thus accords the speaker or publisher is either absolute, entirely freeing the party from any liability to the person injured by the words or the publication, or conditional, that is, the words shall be spoken in good faith, upon a proper occasion.    When the privilege is absolute, the motive of the publication is immaterial. When the privilege is conditional actual malice will bring about liability.    As remarked by Mr. Chief Justice Bleckley, in *Wilson v. Sullivan*, 81 *Ga.* 243, " the characteristic feature of absolute, as distinguished from conditional, privilege is, that in the former the question of malice is not open; all inquiry into good faith is closed."    The remarks of a legislator in debate, the words of a judge in the course of a judicial proceeding, the averments in a pleading filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, are instances of absolute privilege.    While the code does not in any place use the term "absolute privilege," it is recognized as a part of the law of this State in section 3842, which deals with the subject of pleadings, and was expressly held to be the law in the case above cited. The privileged communications enumerated in section 3840 are those where the privilege is conditional.    Among such are found comments of counsel fairly made on the circumstances of the case and the conduct of parties in connection therewith.    When in an action for slander it appears that the words spoken were a part of the comments of counsel and were pertinent and material

to the case under investigation, no matter how false the assertions were, a recovery for slander can not be upheld, unless it be shown that in making the remarks counsel was animated by express malice.   As was said by Mr. Chief Justice Warner, in *Lester* v. *Thurmond,* 51 *Ga.* 118, 119, " The clear distinction which the law recognizes between words spoken by an attorney at law, in addressing a jury in the regular course of judicial proceedings, and the same actionable words spoken in private conversation, not privileged communications, is this :   No action can be maintained against an attorney at law for words spoken to a jury, as in this case, without proof of *actual malice,* and it is incumbent upon the plaintiff to furnish such proof; whereas, when actionable words are spoken in private conversation, the law implies that the words were spoken maliciously, and it is not incumbent on the plaintiff to prove malice.   The attorney at law is protected by his privilege, on account of words spoken in the discharge of his duty in the regular course of judicial proceedings in the courts, unless express malice is proved.   If, however, an attorney at law avails himself of his position as an advocate *maliciously* to slander another by uttering words wholly unjustifiable, then he would be liable to an action, but not otherwise."   A lawful occasion can not be used by any one to whom the law accords a conditional privilege, for the purpose of venting his malice; and if he do so, he is bound to prove that his assertions are true.   *Taylor* v. *State,* 4 *Ga.* 24.   If the words complained of in the present case had been uttered by the attorney in open court, during the progress of a trial in which he was representing his client, he would not be 'liable in damages to those about whom the words were spoken, unless the words were spoken as a consequence of express malice on his part.   But it does not follow, because an attorney will be exempt from liability for words spoken in open court in the conduct of his case, that he would be likewise exempt when repeating the words on another occasion when he was under no obligation either to the public or his client to speak in reference to the matter.   While no malice would be implied, either from the character of the words or the falsity of the charge, when they were uttered in the course of a judicial proceeding, the repetition of the words, either in private conversation or in a published article in a newspaper at his instance,

when no public or private duty required him to repeat them, would place him, as to such repetition, upon the same footing as any one who speaks of another, and he speaks then at his peril if the words are not true. See, in this connection, Townshend on Slander and Libel (4th ed.), § 218, p. 327.

Among the communications enumerated as belonging to the class of conditional privilege are also found fair and honest reports of proceedings of legislative or judicial bodies. If a newspaper publishes a fair and an honest report of a trial, stating what was the character of the controversy and embracing the comments of counsel actually made during the progress of the trial, there could be no recovery for such publication, unless it was made to appear that the publisher was animated by express malice; and this would be true notwithstanding there were contained in the publication, as a part of the comments of counsel, words which if uttered elsewhere would have rendered the speaker and the publisher liable in damages. Ordinarily the publisher of a newspaper is not privileged in the publications therein made, but is liable on account thereof in the same manner as other persons; and defamatory matter does not become privileged simply for the reason that it is published in the form of an advertisement, or as news, or is furnished by a correspondent, or is copied from other publications. *Cox* v. *Strickland*, 101 *Ga.* 493 (3). On the subject of privileged communications generally, see Newell on Slander and Libel (2d. ed.), 388 et seq.; Townshend on Slander & Libel (4th ed.), 295 et seq.; Odgers on Libel & Slander (text-book series), t. p. 140 et seq. In an action for libel, that a writing constituted a privileged communication is generally a matter for plea. *Holmes* v. *Clisby*, 118 *Ga.* 820 (2); *Flanders* v. *Daley*, 120 *Ga.* 885 (4). But if it appears upon the face of the petition that the communication was really privileged, there seems to be no good reason why this might not be taken advantage of by demurrer. The petition in the present case distinctly alleges that the words complained of were not uttered by the attorney during the trial of the case which was reported, and therefore they were no part of any comments of counsel during the progress of a judicial trial. Hence the publication was not privileged as a fair and an honest report of the proceedings of a court. The publication of the article was a

voluntary, gratuitous, and libelous· statement by the defendant, purporting to have been made upon a judicial trial, when such was in fact not true. It was also distinctly alleged that the falsity of the statement must have been known to the defendant, for the attorney whose alleged remarks. were reported was the president of the company. There was no error in overruling the general demurrer to the petition. Those portions of the petition which were made the subject of ·special demurrer were allegations which were permissible as matter of inducement or of aggravation or by ·way of innuendo, and therefore were properly embraced within the pleading. The petitions were not subject to any of the criticisms raised in the special demurrers.

*Judgment affirmed. All the Justices concur, except Simmons, C. J., absent.*