RUFUS G. SHIELL, *Plaintiff in Error*, vs. THE METROPOLIS COMPANY, a corporation, *Defendant in Error*.

136 So. 537.

Division A.

Opinion filed August 7, 1931.

*Evan Evans,* for Plaintiff in Error;

*H. L. Anderson,* for Defendant in Error.

BUFORD, C.J.—Plaintiff in error sued defendant in error in the court below for libel. The declaration was in three counts. The first count of the declaration was as follows:

"That on or about the 21st day of March, 1930, in the city of Jacksonville, Duval County, Florida, the defend-

ant falsely and maliciously spoke and published of the plaintiff the words following, that is to say:

'A Jacksonville man and a Jacksonville woman will die in the electric chair if the instructions of Circuit Judge George Couper Gibbs are carried out. Judge Gibbs gave a jury late today instructions to find Florence Weinkle and Rufus G. Shiell guilty of first degree murder for beating to death W. I. (Pat) Williams in a local apartment house', to the damage of plaintiff in the sum of $50,000.00.''

There is no material difference between the allegations of the second count and of the first count.

The third count was as follows:

''That at all times hereinafter mentioned defendant was the publisher of a newspaper in the City of Jacksonville, Duval County, Florida, called 'Jacksonville Journal'; that on or about the 21st day of March, 1930, the defendant by and through its agents, servants or employees, who were then and there acting in the scope of their employment, falsely and maliciously published in said newspaper and of and concerning the plaintiff the words following, that is to say: 'Judge orders death verdict for pair here. Man and woman stand convicted for murder. A Jacksonville man and a Jacksonville woman will die in the electric chair if the instructions of Circuit Judge George Couper Gibbs are carried out. Judge Gibbs gave a jury late today instructions to find Florence Weinkle and Rufus G. Shiell guilty of first degree murder for beating to death W. I. (Pat) Williams in a local apartment house. The Judge gave no instructions in the case of Earl Williamson, third defendant in the speedy trial which ended about 4:30 P. M. today, and his fate was left in the jury's hands. At noon today defense counsel for the three defendants moved for a directed verdict of not guilty. This was denied by Judge Gibbs, who later instructed the jury to find him guilty'; to the damage of plaintiff in the sum of $50,-000.00.''

The defendant plead not guilty.

Sub-section 5 of Section 2666 R. G. S., 4333 C. G. L. provides as follows:

''Operation of Plea of Not Guilty.—In actions for

torts the plea of not guilty shall operate as a denial only of the breach of duty or wrongful act alleged to have been committed by defendant, and not of the facts stated in the inducement, and no other defense than such denial shall be admissible under that plea; all other pleas in denial shall take issue on some particular matter of fact alleged in the declaration; and where in the declaration the breach of duty or wrongful act is alleged to have been committed by defendant through the agency of any other person or thing the alleged relationship between the defendant and that other person or thing shall not be put in issue by the plea of not guilty."

At the close of the testimony for the plaintiff, the defendant moved for an instructed verdict and upon the court announcing that it would instruct a verdict in favor of the defendant the plaintiff in the court moved for nonsuit with a bill of exceptions which was granted. Thereupon, writ of error was sued out.

The motion for the directed verdict was upon the ground that the publication complained of was either absolutely or qualifiedly privileged and no evidence contained either in the publication or otherwise had been adduced by the plaintiff to show express malice.

The publication was as follows:

## "JUDGE ORDERS—DEATH VERDICT FOR PAIR HERE

### Man and Woman Stand Convicted for Murder

A Jacksonville man and a Jacksonville woman will die in the electric chair if the instructions of Circuit Judge George Couper Gibbs are carried out.

Judge Gibbs gave a jury late today instructions to find Florence Weinkle and Rufus G. Shiell guilty of first degree murder for beating to death W. I. (Pat) Williams in a local apartment house.

The Judge gave no instructions in the case of Earl Williamson, third defendant in the speedy trial which ended about 4:30 P. M. today and his fate was left in the jury's hands.

At noon today defense counsel for the three defendants moved for a directed verdict of not guilty. This was denied by Judge Gibbs, who later instructed the jury to find them guilty.

William T. Harvey and William A. Hallowes, defense attorneys, did not place any witnesses on the stand. J. V. Keen and J. Henry Taylor prosecuted."

One of the newspapers in which the publication appeared was introduced in evidence and that newspaper bore the "flaghead" as follows:

"The Jacksonville Journal, Gold V. Sanders, Editor in Chief, William C. Tunks, General Manager, formerly the Florida Metropolis. A six week day newspaper, published by The Metropolis Company".

The record of the proceedings in the Circuit Court in regard to which the alleged libelous report was published, shows the following to have been what really transpired:

"In the Circuit Court, Fourth Judicial Circuit of Florida, in and for Duval County.
Wednesday, January 15th, A. D. 1930.
Court met this day as ordered at ten o'clock A. M.
Honorable George Couper Gibbs, presiding.
T. Murphy Brown, Deputy Clerk.
R. E. Broward, Deputy Sheriff, Bailiff to the Court.
Thereupon the Honorable George Couper Gibbs, Judge, retired, and the Honorable DeWitt T. Gray, Judge, presided.
State of Florida
     vs.    1938-C    Arraignment vs Shiell
Ertle Williamson, alias Earl
Williamson, Rufus Shiell and
Florence Winkle.

Comes now Samuel B. Wilson, Assistant State Attorney, who prosecutes for the State of Florida, comes also Rufus G. Shiell, one of the defendants herein, in proper person and attended by counsel; Thereupon the defendant, Rufus Shiell, was solemnly arraigned and pleaded not guilty to the indictment, and each and every count thereof.

It is now considered by the Court and so ordered that Court take recess until tomorrow, Thursday, January 16th, A. D. 1930, at nine-thirty o'clock A. M.

STATE OF FLORIDA,
COUNTY OF DUVAL,
   I, L. G. Hitchcolk, Clerk of the Circuit Court, Duval
County, Florida, do hereby certify that the foregoing is
a true and correct copy and literal transcript of the
record of a certain instrument as the same appears
recorded in Circuit Court Minute Book 38, at page 470,
of the Public Records of Duval County, Florida.
Witness my hand and seal of Office at Jacksonville, Flor-
ida, this 28th day of January, A. D. 1931.
                         L. G. Hitchcolk,
                         Clerk Circuit Court,
                         By E. F. Gates,
(SEAL OF SAID COURT) . Deputy Clerk.
Said Exhibit 3 was in the words and figures following:
            IN THE CIRCUIT COURT
     FOURTH JUDICIAL CIRCUIT OF FLORIDA
          IN AND FOR DUVAL COUNTY
          Friday, March 21st, A. D. 1930.
   Court met this day as ordered at nine-thirty o'clock
A. M., Honorable George Couper Gibbs, Judge presiding
T. Murphy Brown, Deputy Clerk.
R. E. Broward, Deputy Sheriff, Bailiff to the Court.
State of Florida
        vs        1938-C              Verdict.
Ertle Williamson, alias Earl
Williamson, Rufus Shiell and
Florence Winkle.
   Now again on this day comes J. V. Keen, Assistant
State Attorney, who prosecutes for the State of Florida,
come also the defendant, Ertle Williamson, alias Earl
Williamson, Rufus Shiell and Florence Winkle, each in
proper person and each attended by counsel, and issue
having been joined, comes also the jury of twelve good
and lawful men, to-wit: L. P. Christiansen, Geo. R.
Seavy, R. V. Whitehead, S. H. Pridgeon, Ira R. Pulcifer,
C. W. Dishinger, J. K. Leslie, C. A. Thrower, E. H.
Rogers, Clarence I. Campbell, D. Copp and Jas. S. Alex-
ander, who were heretofore duly empaneled and sworn
according to law to try this cause; at the end of the evi-
dence in chief for the State of Florida, the Defendants
moved the Court to charge the jury to find the Defend-
ants not guilty, which motion after argument of counsel

was denied by the Court and the exception of the defendant noted; whereupon the defendants announced they would introduce no testimony; Whereupon the State of Florida announced it would introduce no further testimony, whereupon, upon motion of the Defendants, the Court set aside its former ruling denying the Defendant's motion for an instructed verdict in their favor and the Defendants moved the Court jointly and severally to charge the jury to find the Defendants not guilty, Whereupon the State of Florida joined in said motion only insofar as the Defendants Rufus Shiell and Florence Winkle were concerned and opposed the granting of said motion insofar as the defendant Eartle Williamson alias Earl Williamson, was concerned, and the Court having heard the argument of counsel, granted the said motion insofar as the defendants Rufus Shiell and Florence Winkle were concerned and denied said motion insofar as the defendant Eartle Williamson, alias Earl Williamson, was concerned, and exceptions was noted for the defendant Eartle Williamson alias Earl Williamson, whereupon the Court announced in the presence of the jury that it would at the proper time charge the jury to find the Defendants Rufus Shiell and Florence Winkle not guilty; whereupon the Court permitted counsel for the defendants and for the State to withdraw their announcement that they had no further testimony to offer. Whereupon the defendants introduced further evidence in rebuttal, and the evidence for both the State and the defendants having been introduced, the defendant Eartle Williamson, alias Earl Williamson, moved the Court to instruct the jury to find said defendant, Eartle Williamson alias Earl Williamson, not guilty, and said motion being submitted without further argument, was, upon its consideration, denied by the Court, to which ruling of the Court the said Defendants exception was noted. Whereupon the jury having heard the evidence, the argument of counsel, and the charge of the Court, retired to consider of their verdict and having considered of their verdict, returned into open Court their verdict in words and figures as follows:

'Jacksonville, Florida, March 21st 1930. We the jury, find the defendants Rufus Shiell and Florence

Winkle not guilty; and the defendant Ertle William-
son, alias Earl Williamson, guilty of Manslaughter,
Sô say we all. Jas Alexander, Foreman.'

Whereupon, on motion of the Defendants, the jury
was duly polled.

Whereupon the said verdict was duly filed and the
jury discharged from further consideration of this cause
and the Defendant Ertle Williamson alias Earl William-
son, was remanded to the custody of the Sheriff to await
a further order of the Court.

It is now considered by the Court and so ordered that
Court take recess until tomorrow, Saturday, March 22nd,
A. D. 1930, at ten o'clock A. M.''

The publication here under consideration when taken in
connection with the facts as they transpired was neither
absolutely or qualifiedly privileged. Publications in regard
to judicial proceedings are only qualifiedly privileged when
the report is accurate, fair and impartial. The report in
this case was neither accurate, fair nor impartial.

In the case of American Publishing Co. vs. Gamble, 115
Tenn. 663, 90 S. W. 1005, the Court speaking through Mr.
Justice Neil, said:

''Unless the court has itself prohibited the publication,
or the subject-matter of the trial be unfit for publication
(Newell Def. S. & L. p 548 #150) any one may, without
incurring liability for damages, publish the proceedings
of courts of justice (Newell on Def. S. & L. p 544, #147)
and the owners of newspapers occupy in respect of such
publications the same status as that accorded to other
persons, in no respect higher or different (Fenstermacher
v. Tribune Pub. Co. (Utah) 43 Pac. 112, 35 L. R. A. 611;
Upton v. Hume, (Or.) 33 Pac. 810, 21 L. R. A. 493, 41
Am. St. Rep. 863; Newell, Def. S. & L. p 552 #158;
Brett, L. J. 46 L. J. C. P. 407; Bramwell, L. J. 5 Ex. D.
56; Salmon v Isaac, 20 L. T. 886; 3 Times L. R. 245).

The right to publish is subject to the limitation that
the report must be a fair one, made in the interest of the
public, and without malicious purpose. Newell, Def. S.
& L. pa. 558 #166; Ackerman v. Jones, 37 N. Y. Super.
Ct. 42; Newell, p 544 #148, subd. 3; Saunders v. Baxter,

6 Heisk. 369; Stevens v. Sampson, 5 Ec. D. 53; 49 L. J. Q. B. 120; 28 W. R. 87; 41 L. T. 782; Newell, p 556, #162, subd. 7; Waterfield v. Bishop Chicester 2 Mod. 118; Newell p 556 #9; Salmon v. Isaac, 20 L. T. 885; Newell, p 556, #10. Such report should not be mingled with comment, either in the body of it or in the heading, as in such case the presumption of malice would the more easily arise; The place for criticism of this character is in the editorial columns (Newell, Def. S. & L. C. 20, #19; Merrill's Newspaper Libel, 184); and even then the comment should be fair and reasonable (Newell, Def. S & L C 20, #18; Woodgate v. Ridout, 4 F & F. 223, Reg. V Tanfield, 42 J. P. 424).

The report need not be a verbatim one, but it must contain the substance of the thing it undertakes to present, or the whole purport or any special, separable, part. Newell p 552, #156; Id. p 554 #161; Salisbury v. Union Advertiser Co., 45 Hun. (N. Y.) 120; Newell 545; McBee v. Fulton, 47 Md. 403; 28 Am. Rep. 465; Flint v. Pike, 4 B & Or. 473; 6 D. & R. 528; Kane vs. Mulvany, Ir. Rep. 26, 2 C. L. 402; Newell, p 553 #160, subd. 3; Lewis vs. Walter, 4 B. & Ald. 605; Newell, p 553, #160, subd. 4. It must not give undue prominence to inculpatory facts, and depress or minify such facts as would explain or qualify the former (Salisbury vs. Union & Adv. Co., supra; Newell p 554 #161; Thomas v. Croswell, 7 Johns (N. Y.) 264, 5 Am. Dec. 269; Newell, p 557; Grimwade v Dicks, 2 Times L. R. 627; Newell, p 555; Haywood & Co. v. Haywood & Sons, 34 Ch. D. 198; 56 L. J. Ch. 287; 35 S. R. 392; 55 L. T. 729; Newell, p 555; Dodson v. Owen, 2 Times L. R. 111; Newell, p 556, S. S. 8), and must not omit material points in favor of the complainant party, or introduce extraneous matters of an injurious nature to him. (Cooper v. Lawson, 8 A & E 746; 1 W. W. & H. 601; 2 Jur. 919; 1 P & D 15; Newell, p 558; Clement v. Lewis (Exch. Ch.) 3 Br. & B. 297; 3 B. & Ald. 702; 7 Moore 200; Bishop v. Latimer, 4 L. T. 775; Newell, p 558).

In short, the report must be characterized by fairmindedness, honesty and accuracy. Newell, Def. S & L. p 551 #155, Stanly v Webb, 4 Sandf. (N. Y.) 21; Edsall v Brooks, 17 Abb. Prac. (N. Y.) 221; Id., 26 How. Prac. 426; Newell, p. 545.''

In Haynes vs. Clinton Printing Co., 169 Mass. 512, it is said:

"An article in a newspaper, containing the statements that a person named is suspected of murder, and that there are said to be grounds of suspicion, and which is open to the interpretation that it was intended in a veiled way to countenance the suspicion, and also containing the statement that there is a rumor of his confession, is libelous, and its publication is actionable without an allegation of special damage.

Upon the question whether words published in a newspaper are privileged, as on the question whether they are libelous, the same rule applies to repetitions or insinuations of what is false that applies to false statements directly made.

If the innuendos in a declaration for libel are not borne out by the words in the article complained of, they may be rejected as surplusage, when the words read as ordinary persons would understand them, are libellous *per se.*"

In Age Herald Publishing Company vs. Waterman, 102 Ala. 665, 81 Sou. 621, it was held:

"A fair and accurate report may be made of a judicial proceeding either by reporting it literally and completely, or by giving a more or less condensed summary. And in case of a partial or condensed report its fairness and accuracy with respect to the particular question in hand must in general be determined by the jury. Parsons v Age Herald Publishing Co. 181 Ala. 439, 449, 61 Sou. 345. In the instant case it was clearly a jury question.

Where the occasion is not one of privilege, the falsity of the publication is presumed, and malice is presumed from falsity. But where the occasion is privileged, as, here, and the publication is found to be fair and accurate, there is no presumption of malice from falsity, and the plaintiff cannot recover without proof of actual, as distinguished from merely legal, malice. 25 Cyc. 524 (B).

We are unable to discover anything in the language of this publication, or in the circumstances under which it was made, which has any tendency to support an in-

ference of actual malice; and the trial judge, with plaintiff's consent, specifically instructed the jury that they could not award punitive damages. Yet defendant was not for this entitled to the general affirmative charge under the general issue, since as above pointed out, the issue of fair and accurate report could not be determined in his favor by the Court as a matter of law."

In Taylor vs. Tribune Publishing Co., 67 Fla. 361, 65 Sou. 3, this Court held:

"There can be no question that it is libelous to falsely charge in a public newspaper that a husband wants a divorce and says his wife is a bigamist. It may be that the pleader intended to deny that she was a bigamist, and to assert the well recognized principle of law that a false charge is none the less libelous because another is credited with its authorship, and upon this theory the plaintiff is falsely charged with a crime, which is, of course, libelous.

The demurrer is sought to be sustained upon a theory that the publication is a fair statement of a judicial proceeding, and therefore, privileged.

Two answers are readily apparent to such contention. The declaration does not disclose that the item purports to be a fair or other statement of a judicial proceeding, and again malice on the part of the publisher would destroy the privilege."

In Sweet vs. Post Publishing Co., 215 Mass. 450, 102 N. E. 660, it was held:

"But no duty rests upon the publishers of a newspaper to report judicial proceedings, and their interest in such matters is only that which all the rest of the community has. It is for the interest of every one that crime should be detected and punished and every one has the highest interest in whatever pertains to the proper administration of justice. It is upon these grounds that reports of judicial proceedings fairly and correctly made are privileged. Cowley v Pulsifer, 137 Mass. 392, 50 Am. Rep. 318. Kimball v Post Publishing Co., 199 Mass. 248, 85 N. E. 103, 19 L. R. A. (N. S.) 862; Kimber v The Press Association, Ltd. (1893) L Q B. 65. In order to be privileged such reports must be not only fair and impartial but they also must be accurate.

The same principle which requires that they should be fair and impartial requires that they should be accurate, at least in regard to all material matters. Kimber v The Press Association, Ltd., supra. A distorted report cannot in the nature of things form the basis for a correct judgment. In a sense it may make no difference to the public so far as the course of judicial proceedings is concerned, whether it is John Smith or John Jones who is arrested. But the administration of justice would be a farce or worse than a farce if the guilty escaped and the innocent were punished, or if the rights of parties were determined in a manner in which according to plain principles of justice they should not be. It is of the highest consequence, therefore, in order to enable the public to judge rightly, that a report of judicial proceedings should be not only fair and impartial but should be accurate also.''

In Brown vs. Globe Printing Co., 213 Mo. 611, 112 S. W. 462, it was said:

''While a condensed report of proceedings constituting a privileged occasion, if prepared faithfully and truly, is privileged, the suppression of parts of the testimony in the proceedings, which would qualify the defamatory matter contained in the report, is evidence of malice, which destroys the privilege.''

In 36 C. J. 1203, the editor says:

''It is libelous *per se* to charge one with unlawfully causing the death of another. So any words containing a direct charge of murder or imputing that one is suspected of the crime, or stating facts sufficient to show a felonious killing are actionable per se.''

There is a distinction between the rules of liability which obtain in regard to defamatory words published by parties, counsel or witnesses in due course of judicial proceedings like these involved in the case of Myers vs. Hodges, 53 Fla. 197, 44 So. 357, on the one hand and those which obtain in regard to defamatory words published by a newspaper or otherwise in reporting what has transpired in a judicial proceeding like those involved in American Publishing Co. vs. Gamble, supra, and in Atlanta News Publishing Co. vs.

Medlock, 123 Ga. 714, 51 S. E. 756, 3 L. R. A. (N. S.) 1139, and in James vs. Powell, 154 Va. 96, 152 S. E. 539, and in re Hayes et al, 72 Fla. 558, 73 Sou. 362, wherein this Court said:

> "Newspaper editors and reporters have the right to publish the proceedings of the courts, including the pleadings, proofs and remarks of the court and counsel, yet they must see to it that they publish them truthfully and correctly."

In Abraham et al. vs. Baldwin, 52 Fla. 151, 42 Sou. 591, it was said:

> "Spoken words falsely imputing to another a criminal offense are actionable *per se* and the law presumes malice in their utterance; therefore, it is not necessary in such a case of the plaintiff in an action for slander to prove express malice, unless the words as spoken constitute a privileged communication.

> A communication, although it contains criminating matter, is privileged when made in good faith upon any subject in which the party communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest, right or duty, and made upon an occasion to properly serve such right, interest or duty, and in a manner and under circumstances fairly warranted by the occasion and the duty, right or interest, and not so made as to unnecessarily or unduly injure another, or to show express malice.

> The subject in relation to which a communication was made may be privileged, yet a communication made upon that subject may not be privileged. If the restraints and qualifications imposed by law upon the publicity to be given such communications be disregarded, the communication is not privileged. If reasonable grounds be exceeded in making the communication, or if the communication be made knowing it to be false, malice might be inferred which would destroy the privilege."

The publication of an article may be in such a manner and under such circumstances as to show a reckless disregard of the rights of the plaintiff and of the consequences to the plaintiff as to authorize a jury to infer and find the

existence of malice where such reckless disregard and want of care would amount to gross negligence. Houston Chronicle Publishing Co. vs. Quinn, 184 S. W. 669.

The case made by the plaintiff's testimony should have been submitted to the jury and the court errer in forcing the plaintiff to a non-suit. The judgment should be reversed. It is so ordered.

Reversed.

WHITFIELD, AND ELLIS AND BROWN, J.J., concur.

DAVIS, J., concurs specially.

TERRELL, J., not participating.

DAVIS, J., (Specially Concurring) : I concur in the conclusion that a sufficient prima facie case of liability was made out under the pleadings and the evidence to withstand the motion made for a directed verdict, and that for this reason, there was error in the judgment for which a reversal should be ordered.

But I am of the opinion that the defendant enjoyed a qualified privilege under the holding of this court in the case of Myers vs. Hodges, 53 Fla. 197 ; 44 So. 357, with respect to the matter published. The publication being qualifiedly or conditionally privileged, it was a matter of law for the court to determine whether there was any intrinsic or extrinsic evidence of malice.

If there was no such evidence, it was proper for the court to direct a verdict for the defendant. But if there was any intrinsic or extrinsic evidence of malice, it then became the duty of the court to submit the question of malice to the jury, with appropriate instructions.

The character of the publication in this case is of such nature as to warrant a fair inference of malice to be drawn from the bare fact that an article of this kind, which was so far from the truth, was published. This inference, however, like all inference of fact would be subject to rebuttal by a showing from the defendant that there was no malice

in fact. For this reason I think the case should have been allowed to go to the jury.

But to hold that a large metropolitan newspaper is to be held liable absolutely for every distorted report of happenings in court procedure which may appear in its columns, on the bare·fact that the reports are inaccurate, although published in good faith, is contrary to what I conceive to be the proper application of our libel laws to modern conditions.

My view is that the present day newspaper performs a public service analogous to that performed by telegraph and telephone companies in gathering and publishing the news. In this respect the publication of what purports to be *news* differs from editorial and other matters which are original compositions and for which a stricter rule of liability can and should be applied. The liability of a newspaper in publishing in its columns matters purporting to be "news" gathered by its reporters and· conveyed to it in the usual course of business should be placed on the basis of whether or not the publisher has used due and ordinary care in ascertaining the facts it attempts to publish from an apparently reliable source. When it does so, or when its employed reporters who gather news for it, are competent and trained men in their profession and are not negligent in getting their facts from apparently and reasonably believed to be authentic sources, I do not think the newspaper publisher falls within the ancient rules of the common law relating to libel which originated under the monarchy of England where free speech was looked upon as an unwise institution of democracy and therefore not to be encouraged and where newspapers, where permitted to exist at all, could only do so by grace of the King and Parliament, who not especially favoring them, never extended to them the freedom of the press which has characterized these United States.

In this case the published article made no charge of

murder against the plaintiffs because they were already charged with and being tried for murder in the courts. The rule laid down in 36 C. J. 1203 therefore has no real application to this case, which should be controlled by the principle of whether the publisher was guilty of such negligence in failing to ascertain the truth as to warrant an implication of malice in publishing what he did. This is a jury question.