FEDDERWITZ *et al. v.* LAMB.

No. 14435.   APRIL 14, 1943.

*Shelby Myrick* and *Hitch, Morris & Harrison,* for plaintiffs in error. *W. D. Lanier* and *B. E. Pierce,* contra.

GRICE, Justice. If the petition states the truth, the defendants are liable, unless the alleged publication was absolutely privileged. In an action for libel, that a writing constituted a conditional privilege is generally a matter for plea. *Holmes* v. *Clisby,* 118 *Ga.* 820 (45 S. E. 684) ; *Flanders* v. *Daley,* 120 *Ga.* 885 (48 S. E. 327). But if it appears upon the face of the petition that the communication was really privileged, this may be taken advantage of by demurrer. *Atlanta News Publishing Co.* v. *Medlock,* 123 *Ga.* 714, 721 (51 S. E. 756, 3 L. R. A. (N. S.) 1139). "The characteristic feature of absolute, as distinguished from conditional, privilege is, that in the former the question of malice is not open; all inquiry into good faith is closed." *Wilson* v. *Sullivan,* 81 *Ga.* 238, 243 (7 S. E. 274). While the Code does not use the term "absolute privilege," our courts have said that it is recognized as a part of the law of this State in section 105-709, which deals with the subject of privilege, and it was expressly so held in *Wilson* v. *Sullivan,* supra. See *Atlanta News Publishing Co.* v. *Medlock,* supra. The cases just cited are also authority for the proposition that what is contained in the Code section mentioned above deals with cases of conditional privilege only. Apparently the only Code section we have which deals with absolute privilege is section 105-711 of the Code of 1933, which reads as follows: "All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However false and malicious, they are not libelous." The section was codified from the case of *Wilson* v. *Sullivan,* supra. Since it is plain that the instant case does not deal with averments contained in the regular

pleadings filed in any court, we must look elsewhere than this section for the law applicable to the instant case.

At the time this case was tried the laws with reference to the establishment of the State Revenue Department and the duties of the Revenue Commission were contained in the Annotated Code of Georgia, § 58-701 et seq., and the cumulative supplement thereto.

The right of the State Revenue Commission, or the Commissioner, to revoke a license is contained in section 58-732 of the cumulative supplement as follows: "When any license issued under the provisions of this chapter to any person, firm, or corporation, for the manufacture, distribution, or wholesale or retail sale of malt beverages specified in this chapter shall be revoked by any county or municipality of this State, such action shall automatically revoke the license issued to such firm, person, or corporation by the State Revenue Commission, in so far as said license applies to the locality or jurisdiction wherein such revocation took place; and when a license issued to any person, firm, or corporation to engage in any business specified in this chapter shall be revoked by the State Revenue Commission, such action shall automatically revoke the license issued to such person, firm, or corporation by any municipality or county of this State." It does not appear from the petition that the license issued to Lamb by the State Revenue Commission was automatically revoked because of any previous revocation by any county or municipality of this State, but that it was revoked by the State Revenue Commission by virtue of the power recognized by that portion of the clause next above quoted, which reads: "and when a license issued to any person, firm, or corporation to engage in any business specified in this chapter shall be revoked by the State Revenue Commission."

It is the insistence of counsel for the defendants that the rule of absolute privilege should here apply, because the Revenue Commissioner in revoking Lamb's license was performing a quasi judicial act. There is no provision for notice to the licensee, or for any hearing before the commission, or any semblance of a hearing before revoking the license; and save in the instance where the license had already been revoked by any county or municipality, there is nothing to guide the commissioner in determining whether or not he will revoke the license, and no suggestion that in revoking it the commissioner is exercising any judicial or quasi judicial function.

It has been observed that quasi is a Latin word signifying as if, almost; it marks the resemblance, and supposes a little difference between two objects. People *v.* Bradley, 60 Ill. 390, 402, citing 2 Bouvier's Law Dictionary, 411. To the same effect see Barron *v.* Anniston, 157 Ala. 399 (48 So. 58); State *v.* Jeffrey, 188 Minn. 476 (247 N. W. 692), and U. S. *v.* Harbin, 27 Fed. 2d, 892, 893. The term quasi judicial is used to describe, not acts of judicial tribunals usually, but acts of public boards and other officials, presumed to be the product or result of investigation, consideration, and human judgment based on evidentiary facts of some sort in a matter within the discretionary power of such boards or officials. State *v.* Leyse, 60 S. D. 384 (244 N. W. 529, 531). Practically the same thing was held in Oakman *v.* Eveleth, 163 Minn. 100 (203 N. W. 514, 517); and in Hoyt *v.* Hughes County, 32 S. D. 117 (142 N. W. 471, 473).

Whether or not the courts of this State will apply the law of absolute privilege to a communication addressed to an officer in the performance of a quasi judicial act has not heretofore been before the courts of this State. The authorities from other jurisdictions are in conflict. Among those supporting the view that such communications have the character of absolute privilege, because made to the Federal Radio Commission, the Workmen's Compensation Commission, Board of Election Commissioners, and the like, are Arkansas Harbor Terminal Ry. Co. *v.* Taber (Tex. App.), 235 S. W. 841; Wheeler *v.* Hager, 293 Mass. 534 (200 N. E. 561); Shummway *v.* Warrick, 108 Neb. 652 (189 N. W. 301); Independent Life Insurance Co. *v.* Rodgers, 165 Tenn. 447 (55 S. W. 2d, 767); Alagna *v.* New York & Cuba Mail S. Co., 155 Misc. 796 (279 N. Y. Supp. 319); Higgins *v.* Williams Pocahontas Coal Co., 103 W. Va. 504 (138 S. E. 112); Kimball *v.* Ryan, 283 Ill. App. 456; McAlister *v.* Jenkins (Ky.) 284 S. W. 88. An examination of the foregoing cases discloses that each of them presented a situation where the official to whom the communication was addressed was clothed with the duty to investigate and ascertain the facts and to determine whether or not a certain situation in fact existed, and that the representations made to him were for the purpose of aiding him in reaching a conclusion on a matter then under investigation, or shortly to be investigated, or, to express it differently, to be used in a hearing that partook of the

nature of a judicial determination of an issue. The authorities that take the contrary view, however, to wit, that communications addressed to administrative or executive officials or boards, though exercising discretionary powers and even hearings had, are only conditionally privileged, are equally or more numerous. Walker v. Hunter, 86 Colo. 483 (283 Pac. 48); McKee v. Hughes, 133 Tenn. 455 (181 S. W. 930); Coloney v. Farrow, 5 App. Div. 607 (39 N. Y. Supp. 460); Leganowicz v. Rone, 265 N. Y. Supp. 703; Koehler v. Dubose (Tex. Civ. App.), 200 S. W. 238; Hansen v. Hansen, 126 Minn. 426 (148 N. W. 457); and other cases cited in the notes in 136 A. L. R. 549; 12 A. L. R. 1256; 81 A. L. R. 1122; 25 L. R. A. 106. And see Ann. Cas. 1913E, 693; Ann. Cas. 1918E, 1007; Ann. Cas. 1917B, 225.

The instant case presents no occasion for determining which line of the foregoing authorities represents the sounder view, because, even if it were to be conceded that communications made to a State official in the exercise of quasi judicial acts would be absolutely privileged, for us so to rule would be to go outside of this record; for the case is here on demurrer, and paragraph 22 of the petition is in the following language: "That said writing was published on or about the 14th day of March, 1940, by the said John S. Wood [who] submitted the same to the Revenue Commission of Georgia; whereupon said Revenue Commission revoked the licenses which had been granted to petitioner as above set out." This can have no other meaning than that it is therein alleged that so soon as the writing was submitted to the commission, they, acting upon it and it alone, revoked Lamb's license. This was not the act of a party after a hearing, or after the taking of evidence, or after having made anything like a judicial investigation. "Whereupon" has been judicially defined as immediately after. In re Premises, etc., 117 Pa. Super. 132 (177 Atl. 700, 703). To same effect, see Bartow v. Smyth, 14 N. J. L. 286, 288. The Supreme Court of Appeals of Virginia has ruled that while the word does not necessarily imply immediate, instantaneous action, but whether it has that meaning will depend upon the context, it does imply action in consequence of and without change in the facts antecedently stated as the moving cause. Gilligan v. Commonwealth, 99 Va. 816 (37 S. E. 962, 964). On any reasonable construction of the petition, it can mean nothing else than an al-

legation that the commissioner upon receiving the communication, and by reason thereof, and without giving Lamb any notice or an opportunity to contest its truthfulness, and without any hearing of any kind, revoked his license.

In 33 American Jurisprudence, 123, under Libel and Slander, § 125, the statement is made that "An absolutely privileged communication is one in respect of which, by reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action, however hard it may bear upon a person who claims to be injured thereby, and even though it may have been made maliciously. The class of absolutely privileged communications is narrow, and is practically limited to legislative and judicial proceedings and other acts of State, including, it is said, communications made in the discharge of a duty under express authority of law, by or to heads of executive departments of the State, and matters involving military affairs. The privilege is not intended so much for the protection of those engaged in the public service and in the enactment and administration of law, as for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the recovery of damages." And in Newell on Slander and Libel (3d ed.), § 493, it is said: "The great underlying principle upon which the doctrine of privileged communications rests is public policy. This is more especially the case with absolute privilege, where the interests and the necessities of society require that the time and occasion of the publication or utterance, even though it be both false and malicious, shall protect the defamer from all liability to prosecution, for the sake of the public good. It rests upon the same necessity that requires the individual to surrender his personal rights, and to suffer loss for the benefit of the common welfare. Happily for the citizen, this class of privilege is restricted to narrow and well-defined limits."

There are many purely administrative and even executive functions which require the exercise of discretion; but merely because they may call for it does not make them either judicial or quasi judicial acts. In this day of many bureaus in various departments of government, and when their heads and deputies, and in

many instances their mere appointees, are clothed with vast powers over the activities of the people, restraining their liberties, regulating their movements and reaching down into their pocket-books, the safer view, it seems to us, is that taken by the Court of Appeals in the present case, and as respects the rule of absolute privilege in the law of libel, as affecting communications addressed to such officers, to restrict it to the narrow and well-defined limits. In doing so, we follow the beaten path.

The judgment of the Court of Appeals is

*Affirmed. All the Justices concur.*