27945.   NEW YORK LIFE INSURANCE CO. *v.* ITTNER.

Decided March 7, 1940.  Adhered to on rehearing, March 30, 1940.

34

*George L. Sabados, Bryan, Middlebrooks & Carter,* for plaintiff in error.

*Bennet & Peacock, Farkas & Burt,* contra.

STEPHENS, P. J. (After stating the foregoing facts.)

In ground 10 of the motion for new trial error is assigned on the admission by the court, over objection, of the following testimony of the witness W. W. Sapp: "From the investigation that I made and from what I found, in my opinion, I do not think those wounds were self-inflicted." It appears from the motion for new trial on the first appeal of this case to this court that error was assigned on the testimony of Sapp, identical with that involved in the appeal now before the court, as follows: "The investigation that I made and from what I found, in my opinion,

I do not think those wounds were self-inflicted." In ground 11 of the motion now before the court the admission, over defendant's objection, of the following testimony of Dr. H. M. McKemie is assigned as error: "From what I found there, in my opinion, I do not think those wounds or blows were self-inflicted." Likewise it appears from the motion for new trial on the first appeal of this case that the following testimony of this witness, admitted over objection of the defendant, was assigned as error: "From what I found there, in my opinion, I do not think those wounds or blows were self-inflicted." This testimony was identical with that embodied in the present motion for new trial, on which error is now assigned. In ground 12 of the motion now before this court error is assigned on the admission, over objection, of the following testimony of C. C. Ball: "Gentlemen, I do not believe an individual—and I have seen a good many people wounded, shot, and cut—I do not believe a man with the wounds I seen on that gentleman could have possibly covered the territory, been to these different places where I seen something had been, the places where the blood was, and the knife and the razor, and them other things, and then have the power and strength to have tied that stick and belt around his neck and laid down and died. I don't believe that he could have done all that." In the first appeal to this court, error was assigned on the admission, over objection, of the following testimony of this witness: "Gentlemen, I do not believe an individual—and I have seen a good many people wounded, shot, and cut—I do not believe a man with the wounds I seen on that gentleman could have possible covered the territory, been to these different places where I seen something had been, the places where the blood was, and the knife and the razor, and them other things, and then have the power and strength to have tied that stick and belt around his neck and laid down and died. I believe when he got that wound on the neck, that wound him up. I don't believe that he could have done all that—he never knew nothing after he got that lick." The testimony of this witness, on which error was assigned in the first motion for new trial, is substantially the same as that on which error is assigned in the motion for new trial now before the court. The objections to the testimony of these witnesses, and the errors assigned on the admission thereof, are practically the same as they were on the first appeal.

The judgment overruling the first motion for new trial was reversed on the ground that the court erred in the rejection of certain testimony offered by the defendant, on which ruling error was specially assigned. *New York Life Ins. Co.* v. *Ittner*, 54 *Ga. App.* 714, supra. In that decision this court did not deal with the other assignments of error embodied in the motion for new trial, except to rule that the "remaining special assignments of error are without substantial merit, and the question as to the sufficiency of the evidence to support the verdict is not passed upon." "The remaining assignments of error" included assignments of error on the admission of the testimony of the witnesses above referred to.

The plaintiff contends that this court can not now consider the errors assigned on this testimony, as the ruling on the first appeal in this case was an adjudication that the admission of this testimony was not error, or at least that the assignments of error thereon "are without substantial merit" and will not permit a reversal on these grounds. In other words, the plaintiff now contends that on an application of the doctrine of "the law of the case" this court is bound by its former ruling on the former appeal that the admission of this testimony was not error.

It is a rule of general application that where the evidence on a subsequent trial is substantially the same as that on the previous trial, all matters, questions, points, or issues adjudicated on the previous appeal are the law of the case on all subsequent appeals, and will not be reconsidered or readjudicated. 4 C. J. 1093; 5 Id. 1267; *Byrd* v. *Prudential Ins. Co.*, 185 *Ga.* 625 (196 S. E. 72); *Dixon* v. *Federal Farm Mortgage Cor.*, 187 *Ga.* 660 (1 S. E. 2d, 732); *Turner* v. *Davidson*, 188 *Ga.* 736 (4 S. E. 2d; 814, 125 A. L. R. 401). After the case is remanded, this court on a second writ of error will consider only those questions arising subsequently to the remand, or which were not adjudicated in the former determination. 4 C. J. 1097; 5 C. J. S. 1275. So all questions presented by the record on the former writ of error will be considered as finally determined by the judgment; and though such questions were not expressly affirmed or reversed they will, by implication, be deemed affirmed. This is true whether or not the questions raised were expressly treated in the first decision of the court, as the presumption is that in disposing of the case the court considered such questions. The record on a former writ of error may be looked into by this court

for the purpose of ascertaining what questions were before the court, so as to apply the law of the case. See generally 4 C. J. 1105; 5 C. J. S. 1281, 1286; *Savannah, Thunderbolt &c. Ry. Co.* v. *Savannah,* 115 *Ga.* 137 (41 S. E. 592); Livingston v. Allen, 83 Mo. App. 294; Chicago &c. R. Co. *v.* Dinius, 180 Ind. 596 (103 N. E. 652). It has been held that the decision of the appellate court as to the admissibility of certain testimony is conclusive on that question on a subsequent writ of error in the same case. 4 C. J. 1110; 5 C. J. S. 1293. In *Moss* v. *Moss,* 147 *Ga.* 311 (93 S. E. 875), the Supreme Court ruled as follows: "This case was formerly before this court, and is reported in 144 *Ga.* 194 (86 S. E. 548). The decision in that case is controlling as to some of the questions raised in the present record. Certain acts and sayings of the son-in-law, Edwards, to which objection was made, were held to be admissible when the case was here before, and assignments of error on admitting similar testimony are controlled by that decision." In *Rogers* v. *Herbert,* 153 *Ga.* 705 (112 S. E. 828), the Supreme Court held: "The rulings made in this case on former writ of error control the questions now involved." In that case, on the former writ of error (151 *Ga.* 517, 107 S. E. 329), the court held, that it was not erroneous to admit certain evidence; that "it was competent to show by extrinsic evidence what land . . had been previously sold to George Hadley." On another trial the court admitted, over objection, evidence that such part of this land had been sold to such person; and the Supreme Court held that the former ruling on the admissibility of this evidence was the law of the case. Applying the law of the case, it must now be held that the court did not err in admitting the testimony excepted to in grounds 10, 11, and 12 of the motion for new trial.

Likewise, as to grounds 14, 15, 16, and 17, the questions therein raised have been determined by this court in its former decisions in this case, wherein it was held that similar evidence, the exclusion of which is complained of by the defendant, was not admissible. See 54 *Ga. App.* 714, and 59 *Ga. App.* 89, supra. The rulings made on the former decisions of this case are binding as the law of this case, and controlling on this court on the questions raised in the above grounds.

■ However, in ground 9 of the motion for new trial now before the court, the defendant complains of the admission, over objection,

of the following testimony of Dr. J. C. Keaton: "Upon my investigation of that body I would say his death was caused from external, violent, and accidental causes. That is my opinion that it was." This evidence was objected to on the ground that it was an opinion, "a guess, a conjecture, and a conclusion and speculation which was inadmissible." Error is assigned on the admission of this testimony on the ground that it was a conclusion of the witness and an opinion by him with reference to the very issue to be determined by the jury. An examination of the records in the first and second trials of this case, both of which came to this court on exceptions to the overruling of the defendant's motions for new trial (54 *Ga. App.* 714, and 59 *Ga. App.* 89, supra) does not disclose that the defendant excepted to and assigned error on the admission of the same or similar testimony of this witness, or of any other witness in the case. The admissibility of this testimony has not been previously determined by this court. The testimony of this witness was more than a mere opinion that the wounds on the body of Ittner were not self-inflicted. His testimony went beyond that of the witnesses above referred to, who testified only to the effect that the wounds, in their opinion, were not self-inflicted. The testimony of this witness was a conclusion drawn by him that the death of the deceased was not only not self-inflicted but was due to external, violent, and accidental causes. The death could have resulted from wounds which were not self-inflicted, and yet not have been the result of accidental causes in the sense of the double-indemnity clause of the policy. The death could have resulted from external and violent causes and yet not have been "accidental." Where an insured's death is the result of a mutual combat or fight between him and another person, or is the result of his misconduct, or his participation in the act which caused his death, it is not "accidental" in the sense of the double-indemnity clause in an insurance policy. *Gresham* v. *Equitable Accident Ins. Co.,* 87 *Ga.* 497 (13 S. E. 752, 27 Am. St. R. 263, 13 L. R. A. 838) ; *Travelers Insurance Co.* v. *Wyness,* 107 *Ga.* 584, 589 (34 S. E. 113) ; *Gaynor* v. *Travelers Insurance Co.,* 12 *Ga. App.* 601, 603 (77 S. E. 1072). See also *Daniel* v. *Jefferson Standard Life Insurance Co.,* 52 *Ga. App.* 620 (184 S. E. 366). This testimony was a decision by the witness of the very issue in the case which the jury were called on to decide from all the facts and circumstances in evidence.

In *Everett* v. *State*, 62 *Ga.* 65, the opinion which it was held the witness could give, after stating the facts, was that the deceased could not possibly have inflicted the wounds on herself. In *Tanner* v. *State*, 163 *Ga.* 121, 126 (135 S. E. 917), the witness testified as follows: "If Mr. Tanner had been over there at that little bush and had shot Mr. Tarbutton, the shot would have gone in back of his head along here [indicating on Mr. Stephens' head] and come out here in front, and the brain would have gone on down where that did go." This evidence was held admissible. The question there was entirely different from the question here presented. Other cases cited and relied on by the plaintiff are distinguishable. This case presents the question whether the death of the insured was the result of external, violent, and accidental causes. The answer determines the liability or non-liability of the defendant. The policy provided for payment of double indemnity if the death was the result of external, violent, and accidental causes. This suit was instituted to recover the double indemnity under the policy. The defendant denied liability under the double-indemnity provision. The burden was on the plaintiff to establish that the death of the insured was the result of external, violent, and accidental causes. 59 *Ga. App.* 89, supra. "Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor; but if the issue shall be as to the existence of a fact, the opinions of witnesses, generally, shall be inadmissible." Code, § 38-1708. "As a general rule, a witness should be confined to a statement of facts, his opinions being irrelevant and inadmissible. To this rule there are important exceptions. It is the peculiar province of the jury to draw deductions and form conclusions from the facts shown by the evidence, and it is only from the necessity of the case that a witness is allowed to give his opinion to aid the jury in arriving at a correct conclusion upon the facts before them. Thus, experts on questions relating to a particular art or science, or which come under the observation and experience of persons engaged in a particular profession, trade, or occupation, who, from their superior facilities and experience, are better qualified than ordinary jurors to form correct conclusions thereon, are permitted to give their opinions to the jury, based upon given facts which they have testified to themselves, have heard others testify to in the case, or which have

been hypothetically stated to them." *Mayor &c. of Milledgeville* v. *Wood,* 114 *Ga.* 370, 372 (40 S. E. 239).

The fact that Dr. Keaton was a physician and testified to the facts on which he based his conclusion did not render his opinion testimony admissible. He should not have been permitted to express his belief or his opinion that the death of the insured had been due to external, violent, and accidental causes. This was in effect adjudging the defendant liable. See *Mayor &c. of Milledgeville* v. *Wood,* supra. "A witness will not be permitted to decide the very question which the jury are to pass upon, but must state the relevant facts, and let the jury draw their own conclusion therefrom." *Georgia Railway & Power Co.* v. *Head,* 155 *Ga.* 337 (116 S. E. 620) ; *Foote & Davies Co.* v. *Malony,* 115 *Ga.* 985 (42 S. E. 413) ; *McCrary* v. *Pritchard,* 119 *Ga.* 876 (5) (47 S. E. 341) ; *G., F. & A. Ry. Co.* v. *Temples,* 143 *Ga.* 312 (85 S. E. 197). See also *Carolina Portland Cement Co.* v. *Zuber,* 29 *Ga. App.* 96 (113 S. E. 813). As stated in 22 C. J. 502, "As the opinion evidence rule is intended to provide against the mischief of invasion of the province of the jury, a court should as far as possible exclude the inference, conclusion, or judgment of a witness as to the ultimate fact in issue, even though the circumstances presented are such as might warrant a relaxation of the rule excluding opinion but for this circumstance." The admission of the testimony of Dr. Keaton was harmful and prejudicial to the defendant, and requires the grant of a new trial.

■ It was improper for the court to allow the witness I. J. Royal to testify as follows: "At the first stop, that looked like that was right after they had the first scuffling—it was right after where the first scuffling took place, and there was a sign there, but it didn't seem to be as much as was at the first place; all the stops showed signs of scuffling right up to where the body was found." The defendant objected to this evidence on the ground that it was speculative, guesswork, conjectural, and a conclusion of the witness without stating any facts on which to base it. In so far as the use of the word "scuffling" seems to apply to the presence of more than one person, it is our opinion that the court should not have allowed the witness to use this term, but that he should have been confined to a description of the appearance of the leaves, grass, and ground at the "stops" to which he was referring, leaving the jury to de-

termine whether more than one person was present at the time these signs or marks were made. See *Perdue* v. *State*, 135 *Ga.* 277 (69 S. E. 184). However, a new trial might not necessarily be granted because of the admission of this testimony, for the reason that there appears from the record the testimony of three other witnesses concerning a description of the leaves, grass, and ground near where the body was found, and some distance therefrom, in which the word "scuffling" was used in the same manner as used by the witness Royal, and this testimony was admitted without objection.

■ The argument of counsel for the plaintiff, referred to in grounds 7 and 8, as follows: "This case was reversed upon a technicality," referring to the previous reversal of this case by this court, and, "If these insurance companies had used as much money in trying to find the murderer of Arthur Ittner as they have used in trying to murder the character of Arthur Ittner, their status would have been better," was improper. It was withdrawn by counsel for the plaintiff when counsel for the defendant moved to declare a mistrial. Since a new trial is granted, it is not necessary to determine whether the judge erred in refusing to declare a mistrial on account of this argument.

■ Since a new trial is granted, it is not necessary to pass on the questions presented in grounds 18 and 19, in which the defendant contends that the evidence did not authorize a finding of bad faith of the defendant and an award of damages therefor and attorney's fees.

■ Because of the erroneous admission of the testimony of Dr. J. C. Keaton, dealt with in the second division of this opinion, the judge erred in overruling the defendant's motion for new trial.

*Judgment reversed. Sutton, J., concurs.*

FELTON, J., concurring specially. I concur in the judgment of reversal for the reason that in my opinion a verdict for the plaintiff was not authorized by the evidence.