29826. ATLANTA ENTERPRISES INCORPORATED *v.* JAMES.

DECIDED JANUARY 27, 1943.

774

*Marvin G. Russell,* for plaintiff in error. *James A. Branch, Thomas B. Branch Jr., James A. Branch Jr.,* contra.

FELTON, J. (After stating the foregoing facts.)

1. The demurrer was properly overruled. The petition alleged that Brand represented to plaintiff that there was no pressure in the cylinder and that it was safe for plaintiff to begin his work, and that plaintiff did not know there was pressure in the cylinder and

that the machine was not ready for him to begin his work. These and other allegations were sufficient to show superior knowledge, actual or constructive, of the latent danger, on the part of the defendant, and failure to warn James of it, and were therefore sufficient to show a cause of action. *Huey* v. *Atlanta,* 8 *Ga. App.* 597 (70 S. E. 71).

2. Ground 1 of the amended motion complains of the admission of the following testimony of the witness Nix: "In the practice of my trade here in town there is a custom which prevails generally throughout this city as to the condition that a machine is to be turned over by an engineer for a machinist for work. It is a general practice that the engineer clears up his machine, ready for the machinist to work on. If there is any current or switches, he is familiar with the operation of them, and he pulls them; and if there is a gas pressure or a back pressure of any kind on a machine, that is pumped out to relieve the machine of the pressure before the machinist disassembles or does any work on it. That is the general custom prevailing in this locality and it is the practice I have always followed. It is generally known to the machinists and engineers throughout this locality." When this evidence was offered counsel stated: "We object to that on that ground that it is not a question of custom; it is a question of what actually happened in this case; and we move to exclude the question as now put on the ground that it is irrelevant and immaterial." It has been repeatedly ruled that an objection that evidence is "irrelevant and immaterial" is insufficient. *Laney* v. *Barr,* 61 *Ga. App.* 145 (6 S. E. 2d, 99). There was no objection on the ground that the custom had not been pleaded by the plaintiff and that evidence offered to prove its existence would involve the presentation of a theory of liability which the defendant had not been called on by the pleadings to meet. There is no merit in this ground. The ground contains the statement: "The admission by the court of this testimony was harmful and injurious to the defendant, not only because of the objection then and there made, but for the further reason that . ." This does not help the situation. All the objections which are to be relied on must be made when the evidence is offered. Objections can not be urged for the first time in the motion for new trial. *Mickle* v. *Moore,* 193 *Ga.* 150 (17 S. E. 2d, 728). Another reason why the ground is without merit is that

later, similar evidence was introduced without objection. *New York Life Insurance Co.* v. *Ittner,* 62 *Ga. App.* 31 (4) (8 S. E. 2d, 582).

3. Ground 2 complains of the refusal of a request to charge the jury as follows: "A machinist employed by another to repair machinery, and having knowledge that some of it is imperfect and needs repairing, and undertakes to repair the machinery himself, or in company with another coemployee, takes the risk of discovering the condition of the machinery at the time he attempts to repair it, such risk being incident to his vocation, and that the incompetency or negligence of other employees, agents or officers of the defendant, resulting in putting the machinery out of order and rendering it dangerous, will not make the defendant liable for any injury which the plaintiff sustains in handling the machinery while engaged without their assistance in repairing it." The request does not take into consideration the invitation to repair in connection with the prevailing custom. There is no merit in this ground.

4. The case on its facts is a close one. Several facts are clearly shown by the evidence: The witness Nix testified: "In May 1939, and some little time prior to that time, the Capital City Machine Shop had done some work on the air-cooling machines of the Atlanta Enterprises Inc. in the Fox Building. I recall the occasion when Paul James was injured in the Fox Theater Building. Prior to that time I had received a 'phone call from Mr. Thornton, the chief engineer. He told me he had some work to do on the stuffing box; that the nut would not tighten the packing on the rods; and he said he wanted a machinist to come out and see what the trouble was. Then Mr. Brand, I believe his name was, Mr. Thornton's assistant, called me up late one afternoon and said the machine would be ready for the machinist to work on next morning. He said to have the man out there the first thing, about ten o'clock. I gave that information to Paul James and told him that Brand said the machine would be ready to work on the first thing next morning." It further appeared: (a) The machine had previously been in use. When in operation gas under high pressure was contained within it. (b) The fact that the machine was not in operation was no indication that it did not contain gas. If gas was not present it was safe to work on. If it contained gas it was

highly dangerous, and any removal of the parts which confined the gas would almost certainly result in injury to the workman who did it.   (c) The work which it was necessary for James to do involved the removal of some of these parts.   (d) Brand's statement to James "not to screw the nut all the way off" did not amount to a warning and can not be construed as such.  If Brand had had reason to believe the machine contained gas it would have amounted to negligence for him to permit James to begin his work before the gas was drawn off and the cylinder relieved of pressure.   There is no evidence of ill feeling on the part of Brand towards James, or any desire that he should be injured.  James began his work while Brand was present.  The removal of the nut did not cause the explosion.  That did not occur until several seconds, perhaps a minute or two, after the nut had been taken off.   (e) James was an experienced mechanic, familiar with air-conditioning machines, and had, in fact, worked on that particular machine before. (f) Brand died before the trial and the court and jury were therefore without the benefit of his version of what occurred at the meeting between him and James; but from the testimony of the chief engineer, which will be quoted later herein, it seems clear that the chief was the one who knew or ought to have known of the condition of the machine, that Brand did not know it, and that the serious mistake Brand made was in permitting James to begin work in the chief's absence.   (g) In addition to the above there was before the jury the evidence of custom set out in division 2 of this opinion.

With these matters in mind it is necessary to determine whether the evidence was sufficient to support the verdict, and it should be stated at the outset that none was offered in support of the allegations in the petition that Brand represented to James that there was no pressure in the cylinder and that it was safe for James to begin work.  It was a question for the jury whether the custom referred to in division 2 above existed.  If it did exist, then a duty under it rested on the defendant, and if the breach of this duty resulted in injury to James the defendant was liable, in view of the chief engineer's employment of plaintiff to repair the machine.   This does not mean that under the custom the defendant would become an insurer that the machine was safe; but it would mean that the defendant would be obligated to use ordinary care,

in advance of the beginning of James's work, to put the machine in proper shape for him and to see that no hidden danger existed, especially where the danger did not exist by reason of the particular defect in the machine. And the jury had the right to find that, had reasonable inspection been made, the existence of the gas in the cylinder would have been ascertained. After that, common prudence would have required that the machine be drained of gas before it was turned over to James for repair.

We should here state that James testified: "I was not supposed to fool with any valves" (this, in response to a question as to whether he had made any inspection to see whether the in-take or out-go valves "were on or off") ; and C. M. Thornton, chief engineer of the defendant, testified that the machine had been cut off all during the winter, and, "As to whether that machine was ready for the work to be done on it, when they started there—no, there wasn't anything done to it at all. I did not know when he was coming. It was not ready for the work to be done. It ought to have all the gas out of it before you start. All the valves were cut off, but that leaves some of the gas in there. I cut the motor out before I closed the valves. The machine was in operation only one day before it was reassembled, when the first work was done on it. I tried it for a few minutes that day and it would not work. I then closed all the valves and put it out of operation, and it had not been operated since that time until after this accident happened and until after it was repaired later. When I have a machinist out there to work on my machines, I try to be there when they are doing the work. After I looked the machine over and told them what I want them to do, and see that everything is O K I turn the machine over to them to do their work."

From this evidence and the evidence as to the existence of the custom above referred to the jury were authorized to find that there had been a breach of duty on the part of the defendant. They were authorized to find that the duty of the defendant to exercise ordinary care in having the machine ready for James's work was greater than the duty resting on James, in the exercise of ordinary care for his own safety, to make an examination of the machine in advance of beginning his work. This, although James was an experienced mechanic and familiar with this particular machine. Therefore the evidence was sufficient to support the

verdict. In a consideration of the matter of this custom the case of *Co-op Cab Co.* v. *Preston*, 67 *Ga. App.* 580 (21 S. E. 2d, 251), is of some interest. While the existence of the custom was not specifically pleaded, as previously stated there was no objection on that ground to the admission of the evidence offered to prove it. Had such objection been offered the petition could have been amended. "Where a plaintiff fails to object to evidence offered by the defendant to sustain a defense which, although not set up by plea or answer, could properly have been made by an amendment at the trial, the plaintiff waives any objection to a consideration of such evidence, and the defendant is entitled to its benefit." *Franklin Savings & Loan Co.* v. *Branan*, 54 *Ga. App.* 363, 364 (188 S. E. 67). The same rule applies where the plaintiff, without objection, introduces evidence to sustain a theory of recovery not specifically presented by the petition, such theory not involving a new cause of action.

There having been introduced no evidence to sustain the allegations of the petition that Brand represented to James that there was no pressure in the cylinder and that the machine was safe for James to work on, and no evidence to sustain the allegations as to Brand's superior knowledge of the existence of the danger, and there having been introduced, without meritorious objection, evidence to prove the existence of the custom above referred to, the case may be said to turn on the question whether an amendment setting out the custom and basing the claim for recovery on failure to observe it would have been subject to objection on the ground that it stated a new cause of action. We have no hesitation in saying that it would not.

Under *Ellison* v. *Georgia Railroad Co.*, 87 *Ga.* 691 (13 S. E. 809), a cause of action arises when there exist a duty, a breach of that duty, and resulting damage. The wrong arises when the duty is breached. The gist of the wrong insisted on in the petition in the case at bar was the turning over to James of a dangerous machine which was not in proper shape to be repaired. The allegations are amply sufficient to show that the defendant did this. The *facts* as to the doing of the act are clearly alleged, and the substance of the latter part of the petition is that such act was a wrongful invasion of James's right. But the *reasons* originally pleaded as to why the act was wrongful were not supported by evi-

dence. However, the evidence did show another reason why the act was wrongful, to wit, the failure to comply with the duty involved under the custom. The *Ellison* decision squarely controls this point. In that case *Martin* v. *Gainesville &c. R. Co.*, 78 *Ga.* 307, was overruled, and in referring to it the court stated: "Thus, where the duty claimed was the duty of forbearing to obstruct a sewer pipe which conveyed waste water from the plaintiff's premises and discharged the same on the defendant's land, the declaration was amendable by alleging an easement subjecting his land to the burden of receiving the water so discharged." The following from page 717 is peculiarly applicable to the point we are now considering: "The breach was fully described, but the duty was apparently assumed to exist, for nothing from which it could be rightly inferred was alleged. By reason of this omission, no duty of forbearance to obstruct the pipe appeared, and consequently no cause of action was set forth, although a good and sufficient one was evidently embraced in the design of the pleader. He had a complete design; the duty and breach he intended to declare upon would, if they existed, constitute a real cause of action, and only one fact requisite to show their existence was omitted. By amendment in the court below, made in response to a demurrer, this omission was supplied; the plaintiff pleaded an easement subjecting the defendant's land to the burden of receiving the water discharged from the pipe. The moment this fact was added to what the declaration already contained, a complete cause of action was stated."

The evidence authorized the verdict. It was not error to overrule the general demurrer to the petition or to overrule the motion for new trial.

*Judgment affirmed. Stephens, P. J., and Sutton, J., concur.*