## 56247. GUTHRIE v. THE STATE.

WEBB, Judge.

Oscar Guthrie, Jr., a/k/a Ricky Garlington, was convicted of one count of aggravated assault with intent to murder, one count of aggravated assault with intent to rape, and two counts of burglary. The trial court sentenced him to serve twenty years on each of the burglary counts and ten years on each of the aggravated assault counts, all sentences to be served consecutively, and he appeals. We affirm.

The evidence presented at trial showed that a victim, an unmarried woman 55 years of age, went to bed at approximately 11:30 on Saturday night, March 5, 1977. She was awakened around 5:15 on Sunday morning and walked into the dining room area of her home, where she saw a man standing. The man pushed her back into the bedroom, struck her on the face and raped her. The man then asked her for money, and, telling her that he was on parole, said he was going to kill her because she could identify him. At the time of this conversation, the man was holding a knife in his hand. He then grabbed her by the throat, put a pillow over her head and started hitting her in the head with a lamp. After striking her for some time with the lamp and another object unknown to the victim, he ran from the house.

The victim remained conscious and discovered that her clothing was saturated with blood and that she had lacerations on the back of her head. She attempted to clean up the bedroom area, straightened herself up and got dressed. The first people she told about the incident were her sister and brother-in-law later that afternoon. She was unable to positively identify the person who assaulted her. The victim left her home that day to stay with her sister and brother-in-law. The next night someone apparently entered the home by a front window which was broken out by a concrete block.

The police investigation at the scene centered around the lamp with which the victim had been assaulted; and a key which had been found outside of the window of the house. Investigation proved that the key fit an apartment at 1063 Griggs Street where Guthrie resided.

Fingerprints were obtained from the lamp fragments, compared to the known prints of the defendant, and found to be a positive match with his fingerprints.

Investigator Cofer and Investigator Vaughn of the Rockdale Sheriff's Department both spoke with Guthrie after his arrest. Investigator Cofer, following a Jackson-Denno type hearing, testified that Guthrie told him he entered the residence, asked a woman for money, attempted to rape her "but that he couldn't get it all the way in"; struck the woman with a lamp repeatedly until he thought she was dead; and then fled the residence.

Investigator Vaughn, following a Jackson-Denno hearing, testified that Guthrie related to him that he had entered the home and confronted the woman, that he had pushed her into a bedroom and got on top of her and slapped her and then beat her with a lamp until it broke and he didn't hear any sound from her. Guthrie told Vaughn he then became scared, ran through the house and jumped out a window. Investigator Vaughn further testified that Guthrie told him he did not rape the woman because "I lost my natural before I could get it all the way in her."

A subsequent conversation between Investigator Vaughn and Guthrie occurred, and at that time Guthrie told Vaughn basically the same things as in the previous conversation, but added that on the next night he had returned to the home and broken in with the idea of killing the victim as he had heard that she was not dead.

The defense then called several members of the defendant's family who testified in reference to his past physical and mental history. Dr. Jerry Lazaroff was called as an expert witness by the defense and testified as to treating Guthrie and in reference to complaints Guthrie had made as to headaches which would cause him difficulty with his temper, and as to some drugs he had prescribed. Dr. Lazaroff, on cross examination, testified that he had yet to pass his licensing requirements in the State of Georgia; that he could not be termed a licensed psychologist; and that he was not a licensed psychologist in any state within the United States. He further testified that he had never made a diagnosis in this case; that he had only some tentative hypotheses that he wished to

check out further; and that he simply could not "feel comfortable" making any diagnosis whatsoever without additional information.

Dr. William Sapp testified for the defense and identified himself as a neuro-psychiatrist. Dr. Sapp testified that in his opinion, Guthrie was in a psychotic state "that we call a dissociative episode and. . . would not know right from wrong." Upon cross examination, Dr. Sapp first testified that he was a neurologist, then said he was qualified to do neurology and eventually refused to respond in any manner other than "I'm qualified to do neurology" when asked the question whether or not he was a neurologist.

The state called as a rebuttal witness, Dr. Miguel A. Bosch, director of the Forensic Psychiatric Center Of Central State Hospital, who testified as an expert that he had examined Guthrie and concluded that he had a reactive condition to the fact of imprisonment in jail, and that his physical examination and his electroencephalogram were in normal limits. Dr. Bosch was of the opinion that Guthrie knew right from wrong at the time he examined him and felt that he was competent to understand the charges against him and assist in the trial of the case.

1. Guthrie contends on appeal that the trial court failed to adequately explain to the jury each of the four crimes alleged in the indictment. The trial judge charged the law of aggravated assault with intent to murder or rape as defined by Criminal Code § 26-1302 and burglary (Criminal Code § 26-1601). The appellant made no request for a fuller charge and made no objection to the charge as given. "The omission was not clearly harmful and erroneous as a matter of law, and therefore was not error. *Spear v. State,* 230 Ga. 74 (195 SE2d 397) (1973)." *Jackson v. State,* 230 Ga. 40 (2) (235 SE2d 477) (1977).

2. Under the evidence presented the trial court correctly refused to charge on simple battery as a lesser included offense of aggravated assault. Where the offense of simple battery is not reasonably raised by the evidence, it is not in issue so as to require instructions. *Davis v. State,* 135 Ga. App. 584, 588 (6) (218 SE2d 297) (1975). The evidence here, where the victim was struck in the

face, had a pillow put over her head, was beaten on the head with a lamp and some other unknown object and where the defendant in two different statements told investigators that he beat the woman until he thought she was dead, certainly does not demand a charge for the lesser offense punishable as a misdemeanor.

3. Guthrie complains of improper cross examination of Dr. Sapp. The state questioned him as to the legal definition of sanity in this state in attempting to determine his knowledge in an area in which he was testifying as an expert. The questions were within legal bounds and the witness was unshaken in his opinion as to Guthrie's sanity, although contradicted by the state's expert. No harmful error has been shown.

4. Guthrie moved to quash either Count 2 or Count 3 of the indictment on the ground that the allegations of assault with intent to murder and assault with intent to rape arose from the same transaction, involved the same conduct, against the same victim, at the same time.

The Criminal Code provides that "When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if (1) one crime is included in the other, or (2) the crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." Code Ann. § 26-506 (a).

The two assaults alleged here were in no way included in each other. The assault with intent to rape involved attempted sexual intercourse with the victim while assault with intent to murder involved striking her in the head with the admitted intent of killing her. Both of these offenses require proof of distinct essential elements, each of which separately or together will sustain a conviction, and both are aimed at prohibiting specific conduct. See *Thomas v. State,* 128 Ga. App. 538, 541 (2) (197 SE2d 452) (1973); *Echols v. State,* 134 Ga. App. 216 (4) (213 SE2d 907) (1975).

5. Nor did the judge err in refusing to grant the motion to sever Count 4 of the indictment for the burglary which Guthrie was alleged to have perpetrated on the day

following the incident when the victim was assaulted. This burglary took place at the same location and in his statement Guthrie admitted he returned the next night with the idea of killing the victim. Here, as in *Smith v. State,* 138 Ga. App. 226, 228 (2) (225 SE2d 744) (1976), "We cannot agree with defendant's contention that the instant case is controlled by *Booker v. State,* 231 Ga. 598 (203 SE2d 194) as fortified by *Dingler v. State,* 233 Ga. 462 (211 SE2d 752). The [four] criminal acts of which defendant was convicted constituted a single and continuous scheme covering a time span of only two days." Each offense was connected to the other crimes as a part of a larger scheme and the evidence presented was not of such complexity as to hinder the jury from applying the law intelligently to each offense. Under such circumstances severance is a matter of discretion and the refusal to grant the motion here has not been shown to constitute an abuse thereof.

6. The testimony of Investigator John Cofer contained the following statements: "We interviewed [the victim] concerning the incident which she described as someone breaking into her house early that morning at approximately 5:15 that morning, and she said that she had heard a noise, she got up to investigate this noise. She walked from the bedroom through the hallway into the dining room area of her residence on Green Street in Conyers, and was confronted there by a black male who seemed to be young, appeared to be around six feet tall, medium build, and she said this black male grabbed her at that time. When she asked 'What are you doing here?', he said ———— told her to shut up, and then he said, 'I'm on parole.' "

Defense counsel moved for mistrial on the ground that Guthrie's character had been placed in issue improperly, but did not object as to the admissibility of such evidence. The motion was denied. The same testimony was offered by the victim at a later point in the trial, and the same motion for mistrial was made by defense counsel at that time and denied.

The testimony of the victim as to what the defendant said was admissible as part of the res gestae. Code § 38-305. The statement made in court by Investigator

Cofer repeating what she said to him may have been subject to an objection on the basis of hearsay, but such objection was never made, and it was not ground for a mistrial. "Evidence material to the case is not inadmissible because it incidentally puts the appellant's character into issue. *Whippler v. State,* 218 Ga. 198 (3) (126 SE2d 744) (1962)." *Davis v. State,* 230 Ga. 902, 905 (4) (199 SE2d 779) (1973).

7. We are unable to hold that reversible error occurred in the admission in evidence of photographs of the victim's house, when the photographs objected to are not a part of the record. There was no testimony to indicate that any pictures were posed or set up in a manner to benefit the state's case. Indeed, the violence involved was minimized by the fact that the victim had put the house in some order before the photographs were taken.

8. Allegations that a proper chain of custody was not established to allow introduction in evidence of a key to Guthrie's residence are not borne out by the record. Investigator Cofer testified that the exhibit in question was the key he had recovered at the victim's house, and that it had remained in his possession from the time he found it.

9. Guthrie's best evidence argument in objecting to the trial court allowing Investigator Vaughn to testify as to what he read to Guthrie from the standard Miranda case is without merit. Code § 38-203 applies only where the contents of the writing are in issue. "'*Where the existence of a fact is the question at issue and not the contents of a writing, then oral and written evidence of the fact may both be primary evidence.*'" *Willingham v. State,* 134 Ga. App. 603, 606 (3) (215 SE2d 521) (1975).

10. The trial judge found in Jackson-Denno type hearings held out of the presence of the jury that Guthrie's statements to investigators were freely and voluntarily made. "We must accept that factual determination unless it is shown to be clearly erroneous by a preponderance of the evidence, and it has not been so shown. [Cits.]" *Currelley v. State,* 145 Ga. App. 29, 31 (5) (243 SE2d 307) (1978).

11. The evidence was sufficient to establish Guthrie

as the perpetrator of the second burglary, and the trial court did not err in refusing to direct a verdict in his favor on this count.

12. The victim's testimony that after having attempted to rape and murder her Guthrie "up and left" did not authorize a charge on abandonment of criminal purpose under Code Ann. § 26-1003.

13. The jury requested that the testimony of Investigator Vaughn be read back to them. The judge told them if they reached a point where they needed no further readback, to please let the court know. The foreman notified the judge when they had heard all they wanted to hear, and Guthrie enumerates error on the ground that failure to read back this witness' testimony in its entirety overemphasized the portion read. "The rule in this state is that the trial judge, in his discretion, may permit the jury at their request to rehear in the defendant's presence the requested testimony after beginning deliberation. [Cits.]" *Johns v. State,* 239 Ga. 681, 683 (2) (238 SE2d 372) (1977). Guthrie does not designate in what way the testimony allowed harmed him, and we find no abuse of discretion on the part of the trial judge.

*Judgment affirmed. Quillian, P. J., concurs. McMurray, J., concurs in the judgment only.*

SUBMITTED SEPTEMBER 5, 1978 — DECIDED OCTOBER 2, 1978.

*Douglas N. Peters,* for appellant.
*M. Randall Peek, District Attorney, Calvin A. Leipold, Jr., Assistant District Attorney,* for appellee.