## 59858. SECURITY LIFE INSURANCE COMPANY OF GEORGIA v. BLITCH et al.

CARLEY, Judge.

Charlton Blitch, Jr. was issued a policy of life insurance by appellant-insurer in the face amount of $25,000 with provision for double indemnity in the event of his accidental death. Upon the death of Mr. Blitch appellant paid the $25,000 face amount of the policy to the named beneficiary, Blitch's estate, but refused demands for payment under the double indemnity provision. Appellees, executors of Blitch's estate, instituted suit against appellant to recover those accidental death double indemnity benefits. Appellant answered, alleging that "the insured and deceased was killed by a blast from a shotgun under circumstances which indicate that such was the intentional act of person or persons unknown" and that the death therefore came within a specific policy exception to accidental death coverage. The pertinent policy provision was as follows: "Exceptions: This Agreement does not cover death resulting directly or indirectly from: 1. Self destruction, while sane or insane, or injury inflicted intentionally by another person . . ." Appellant also counterclaimed for return of the life insurance benefits previously paid out to Blitch's estate. The basis for the counterclaim was that "[s]ubsequent to the payment, [appellant] has discovered evidence which shows that the insured met his death . . . as a result of suicide or self destruction." It was alleged that appellant was entitled to the return of the benefits since, under the policy, in the event of the insured's suicide its liability was limited to the amount of the premiums paid.

The case proceeded to trial and resulted in a directed verdict in favor of appellees on the counterclaim against them for return of the

proceeds of the policy already paid out and a jury verdict in favor of appellees on their claim for double indemnity benefits, $3,750 in bad faith penalties and $2,350 in attorney fees. Judgment was entered on the verdict and appellant appeals.

1. Appellant first urges that it was error to deny its motion for directed verdict as to the main action against it. It is contended that appellees failed to show that Blitch's death was due to "accidental means" as defined in the policy and that a verdict was therefore demanded for appellant. It was stipulated that Blitch died from a gunshot wound to the head. All evidence as to how the shot was fired was circumstantial and pointed toward some human agency, either Blitch himself or an unknown person. There was, however, no direct evidence that any person fired the gun. Arguments that this evidence was insufficient to meet appellees' burden of showing that Blitch died as the result of "accidental means" are without merit. *Interstate Life & Acc. Ins. Co. v. Wilmont,* 123 Ga. App. 337 (2, 6) (180 SE2d 913) (1971). See also *Wabash Life Ins. Co. v. Jones,* 147 Ga. App. 254 (248 SE2d 536) (1978). Appellant's argument is, in effect, that appellees did not negate that Blitch's death was the result of suicide or homicide. The burden was on appellant, the insurer, to prove that Blitch's death came within an exclusion to coverage and was not on appellees to negate the applicability of the exclusion. *Interstate Life & Acc. Ins. Co. v. Wilmont,* 123 Ga. App. 337 (1), supra. There was no error.

2. Appellant enumerates error upon the trial court's evidentiary rulings striking that portion of Blitch's death certificate containing the coroner's findings and refusing to admit into evidence the coroner's jury verdict. That part of the death certificate which was stricken denominated Blitch's death as "homicide" and the excluded coroner's jury verdict found the death "was due to Homicide by person or persons unknown." It was not error to strike the coroner's finding of "homicide" from the death certificate. *Liberty Nat. Life Ins. Co. v. Power,* 112 Ga. App. 547 (4c, 5) (145 SE2d 801) (1965); *Wabash Life Ins. Co. v. Jones,* 147 Ga. App. 254, supra. "[T]he rule appears to have emerged that a death certificate serves as prima facie evidence only of (1) the death itself and (2) the immediate agency of the death. Other conclusions, such as those regarding the events leading up to the death or whether the cause of death was intentional or accidental, are not admissible." *King v. State,* 151 Ga. App. 762, 763 (261 SE2d 485) (1979). Nor was it error to refuse to admit the verdict of the coroner's jury. "The verdict of a coroner's jury has no probative value whatever as evidence, is binding upon no one, and can not prejudice the right of any person." *Supreme Council of the Royal Arcanum v. Quarles,* 23 Ga. App. 104 (1) (97 SE 557)

(1918). And, it was not error to exclude the evidence for the limited purpose of negating appellant's bad faith in refusing payment. *Interstate Life & Acc. Ins. Co. v. Hopgood,* 133 Ga. App. 6 (209 SE2d 703) (1974).

3. Error is enumerated upon the trial court's giving of the following charge: "The amount of evidence sufficient to overcome the presumption that death was from accidental means rather than suicide or injury intentionally inflicted by another is a question for you, the jury, to determine." Even assuming that the objection below to this charge was sufficient to preserve the issue for appeal (*Harper v. Ga. Sou. & F. R. Co.,* 140 Ga. App. 802 (232 SE2d 118) (1976)), there was no error. In arguing that the charge was erroneous, appellant relies upon the fact that the language of the charge appears in a decision of this court subsequently reversed by the Supreme Court on certiorari. This is a specious argument. In *Kennesaw Life & Acc. Ins. Co. v. Templeton,* 102 Ga. App. 867, 886 (118 SE2d 247) (1960) an almost identical charge was held to have been "in language which previously has been approved by this court upon factual situations substantially similar to those in the present case. Ordinarily it would seem that this combination of circumstances would require approval of the charge . . ." However, this court in *Kennesaw Life* overruled the case from which the quoted charge was taken, *Mutual Life Ins. Co. v. Burson,* 50 Ga. App. 859 (179 SE 390) (1935), insofar as *Burson* approved a charge on the presumption against suicide in the case in which evidence was produced from which an inference of suicide could be drawn. Thus, this court did not hold the charge in *Kennesaw Life* to be an erroneous statement of the applicable law but only that a charge on that issue was not authorized under the facts of the case. On certiorari, the Supreme Court reversed *Kennesaw Life* and held that the otherwise unobjectionable charge had in fact been properly given under the evidentiary posture of the case. *Templeton v. Kennesaw Life & Acc. Ins. Co.,* 216 Ga. 770 (119 SE2d 549) (1961). Upon remand from the Supreme Court the trial court's giving of the charge on presumption against suicide in *Kennesaw Life,* including that portion attacked in the instant case as erroneous, was affirmed. *Kennesaw Life & Acc. Ins. Co. v. Templeton,* 103 Ga. App. 669 (120 SE2d 128) (1961). We find that the charge here contested by appellant "was in language which previously has been approved by this court upon factual situations substantially similar to those in the present case," *Kennesaw Life,* 102 Ga. App. at 886, supra, and that the instant case was a proper one in which to give it. There was no error.

4. The trial court gave the following instruction: "[W]here the evidence surrounding the death of an insured is circumstantial, an

insurance company, in order to prevail on an excepting clause such as the one relied upon in this case, is required to show by the preponderance of the evidence that the circumstances it relies upon are not only consistent with the theory it seeks to establish, but are also inconsistent with every other reasonable theory." Again, even assuming that appellant's objection to this charge was sufficient, it was an accurate statement of the law and not erroneous for any reason urged on appeal. *Matthews v. Gulf Life Ins. Co.,* 64 Ga. App. 112 (12 SE2d 202) (1940).

5. Appellant urges that the jury instruction on the recovery of a penalty for appellant's bad faith in refusing to pay was erroneous in that the court failed to charge further, apparently without request, that the jury would be authorized *not* to make an award of bad faith penalties if they found appellant had reasonable and probable cause for making a defense to the claim. This argument is meritless. The court charged on the issue of recovery of bad faith penalty substantially in the language of the pertinent Code section, Code Ann. § 56-1206. Appellant made no request for a more explicative charge. There was no error. *Guthrie v. State,* 147 Ga. App. 351, 353 (1) (248 SE2d 714) (1978).

6. Appellant called as its witness the medical examiner who had conducted the postmortem examination of Blitch's body. After qualifying the witness as an expert, appellant propounded a hypothetical question and asked if the witness was able to form an opinion on whether the gunshot wound was or was not self-inflicted. Appellee objected on the grounds that the question called for the witness' conclusion as to the ultimate question for resolution by the jury. This objection was sustained and appellant enumerates this ruling as error.

There has been some confusion with regard to when a witness may testify as to his opinion even though it purports to answer the ultimate question in the case. The true rule in determining whether or not a witness should be permitted to give his opinion testimony, even as to the ultimate issue, is whether or not the question asked of him is a proper one for opinion evidence. " 'If the witness is asked to draw an inference of fact from data observed by him or the expert witness is asked to draw an inference of fact from data observed by him or presented by other witnesses, this is a proper question for opinion evidence. The opinion is one of fact. It is only where the drawing of the inference requires a mixture of law and fact that the question is not a proper one for opinion evidence.' [Cit.]" *Dual S. Enterprises v. Webb,* 138 Ga. App. 810, 811 (227 SE2d 418) (1976). See also *Hogan v. City-County Hospital,* 138 Ga. App. 906, 913 (227 SE2d 796) (1976). Thus, if the witness is asked his opinion as to a fact

and not as to a mixed question of law and fact, he should be allowed to testify even though his opinion is as to the ultimate issue for the jury. *Metropolitan Life Ins. Co. v. Saul,* 189 Ga. 1 (5 SE2d 214) (1939). Applying this rule in the instant case, the question of whether or not Blitch's wound was self-inflicted lent itself to the expert's opinion as to a fact and did not involve a mixed question of both fact and law. Compare *Metropolitan Life Ins. Co. v. Saul,* supra, and *Holt v. State,* 147 Ga. App. 186 (248 SE2d 223) (1978) with *Fishman v. State,* 128 Ga. App. 505 (197 SE2d 467) (1973) (obscenity) and *Tittle v. McCombs,* 129 Ga. App. 148 (199 SE2d 363) (1973) ("excessive" speed). Reliance upon *New York Life Ins. Co. v. Ittner,* 62 Ga. App. 31 (8 SE2d 582) (1940) by appellees and, apparently, by the trial court in sustaining the objection was misplaced. In *Ittner,* a suit for recovery under a policy covering death effected solely through "external, violent, and accidental causes," an expert was allowed to testify that in his opinion the insured's death "was caused from external, violent, and accidental causes." *Ittner,* 62 Ga. App. at 38. This was held to be error because "[t]he death could have resulted from external and violent causes and yet not have been 'accidental.' Where an insured's death is the result of a mutual combat or fight between him and another person, or is the result of his misconduct, or his participation in the act which caused his death, it is not 'accidental' in the sense of the double-indemnity clause in an insurance policy. [Cits.]" *Ittner,* supra. Thus, the holding in *Ittner* was that whether the cause of death was "accidental" and thus covered under the policy being sued upon was a mixed question of law and fact and should not have been addressed by the expert. Under those circumstances, testimony that the death was "accidental" was a legal conclusion "in effect adjudging the [insurer] liable." *Ittner,* 62 Ga. App. at 40. It is clear from Division 1 of *Ittner* that testimony which involved opinion as to an inference of fact alone (the wounds were "not self-inflicted") was admissible. Thus, *Ittner,* insofar as it is applicable here, is not inconsistent with the rule governing permissible opinion evidence we have enunciated above. If the cause and manner of an injury is the ultimate issue of fact to be determined by the jury an expert may nevertheless give his factual opinion but not his legal conclusion on this issue for the benefit of the jury in their fact finding. *Metropolitan Life Ins. Co. v. Saul,* 189 Ga. 1, supra.

New York Life Ins. Co. v. Ittner, 59 Ga. App. 89 (3) (200 SE 522) (1940) which involved hearsay testimony by non-expert witnesses does not require a contrary result. Nor does dicta, unsupported by authority, in *Liberty Nat. Life Ins. Co. v. Power,* 112 Ga. App. 547 (4e), supra, compel a different conclusion. Furthermore, *Power* involved characterization of the death as "suicide," an opinion which

might be, in the context of a suit on an insurance policy, a mixed question of law and fact. Cf. *Liberty Nat. Life Ins. Co. v. Cox,* 98 Ga. App. 582 (106 SE2d 182) (1958); *Mutual Life Ins. Co. v. Durden,* 9 Ga. App. 797, 800 (5) (72 SE 295) (1911). The question in the instant case was whether, in the expert's opinion, the wound was "self-inflicted" and not whether it was the result of Blitch's act of "self destruction."

Having determined that the question here was a proper one for the expert's opinion testimony we turn to whether it was reversible error to exclude his answer. We find that it was not. "On direct examination, to afford a basis for the assertion of error, it must appear that a pertinent question was asked, that the court ruled out an answer, that a statement was made to the court at the time showing what the answer would be, and that such testimony was material and would have benefited the complaining party. [Cits.]" *Foster v. National Ideal Co.,* 119 Ga. App. 773 (1) (168 SE2d 872) (1969). While appellant has met the first two prerequisites to asserting error in the exclusion of its expert's testimony, it has not met the last two. The transcript reveals that when the objection was sustained appellant made no offer of proof as to the excluded testimony. We, therefore, conclude that no error has been shown here.

7. Finally appellant asserts that it was error to grant a directed verdict as to its counterclaim for return of the $25,000 face amount of the life insurance policy paid to appellees. Upon review of the evidence we find no error in the direction of a verdict as to the counterclaim. Appellant presented no evidence of any valid reason for failing to ascertain prior to making the payment to his estate the alleged "true" circumstances surrounding Blitch's death. *Barker v. Federated Life Ins. Co.,* 111 Ga. App. 171 (141 SE2d 206) (1965).

*Judgment affirmed. Quillian, P. J., and Shulman, J., concur.*

ARGUED MAY 12, 1980 — DECIDED JULY 3, 1980 —

*William A. Turner, O. Wayne Ellerbee,* for appellant.
*Berrien L. Sutton,* for appellees.