### 29582.   LAMB *v.* FEDDERWITZ *et al.*

Decided October 10, 1942.   Rehearing denied November 4, 1942.

*Benjamin E. Pierce, W. D. Lanier,* for plaintiff.
*Hitch, Morris & Harrison, Shelby Myrick,* for defendants.

Sutton, J.   1.   The right to sell malt beverages in this State under the act of 1935 (Ga. L. 1935, p. 73; Code, § 58-701 et seq.) is a mere privilege or permit, and involves no personal or property right. *McKown* v. *Atlanta,* 184 *Ga.* 221 (190 S. E. 571).

2.   The revocation of the permit granting such privilege, under the facts alleged in the petition in the present case, was neither a judicial nor a quasi-judicial act. *Southeastern Greyhound Lines* v. *Public Service Commission,* 181 *Ga.* 75 (181 S. E. 834, 102 A. L. R. 517); *Acree* v. *Ragsdale,* 60 *Ga. App.* 717 (4 S. E. 2d, 708).

3.   "An absolutely privileged communication is one in respect of which, by reason of the occasion on which, or the matter in reference to which, it is made, no remedy can be had in a civil action, however hard it may bear upon a person who claims to be injured thereby, and even though it may have been made maliciously. The class of absolutely privilege communications is

narrow and is practically limited to legislative and judicial proceedings and other acts of State, including, it is said, communications made in the discharge of a duty under express authority of law, by or to heads of executive departments of the State, and matters involving military affairs." 33 Am. Jur. 123, § 125.

4. The privileged communications enumerated in Code, § 105-709, "1. Statements made bona fide in the performance of a public duty. 2. Similar statements in the performance of a private duty, either legal or moral. 3. Statements made with the bona fide intent, on the part of the speaker, to protect his own interest in a matter where it is concerned. 4. Fair and honest reports of the proceedings of legislative or judicial bodies. 5. Comments of counsel, fairly made, on the circumstances of his case, and the conduct of parties in connection therewith. 6. Comments upon the acts of public men in their public capacity and with reference thereto," are conditional privileges. " 'The characteristic feature of absolute, as distinguished from conditional, privilege is that in the former the question of malice is not open; all inquiry into good faith is closed.' In every case of conditional privilege, if the privilege is used merely as a cloak for venting private malice, and not bone fide in promotion of the object for which the privilege is granted, the party defamed has a right of action." *Atlanta News Publishing Co.* v. *Medlock,* 123 *Ga.* 714 (3, 4) (51 S. E. 756, 3 L. R. A. (N. S.) 1139).

5. "The defense of privilege can not be raised by demurrer to the petition, unless the facts upon which the privilege may be asserted appear upon the face of the petition." *Bibb* v. *Crawford,* 6 *Ga. App.* 145 (3) (64 S. E. 488); *Ivins* v. *L. & N. R. Co.,* 37 *Ga. App.* 684 (7) (141 S. E. 423); *Atlanta News Publishing Co.* v. *Medlock,* supra.

6. Upon the application of the above-stated principles of law, the petition which alleged that the defendants, who were members of a voluntary organization known as the Brewers & Beer Distributors Committee of Georgia, "organized for the purpose of refusing to sell beer to flagrant law-violating outlets and to ask for revocation of license at such outlets," wilfully and maliciously caused to be filed with the Revenue Commission (now the Department of Revenue) of Georgia, on or about March 14, 1940, a written report which in substance charged that the plaintiff, to

whom had been issued licenses for the sale of beer and wine near Augusta, Georgia, in the County of Richmond, "had been engaged in the improper and illegal sale and distribution of alcoholic beverages in, at, on and near the premises for which the above retail licenses were issued, and has permitted drunkenness, intoxication, vulgar and profane language in, at, on and near the premises where licenses are in effect for the sale of malt beverages and wine, and has encouraged and promoted illegal and improper relationships between girls employed on said premises and customers of the said D. J. Lamb," the plaintiff, "which publication was fraudulent, untrue and maliciously made for no other purpose than that of injuring him as a citizen and injuring his business, thus causing damage to him in his business and his reputation as a citizen and in his credit transactions, and subjecting him to suspicion and contempt in his dealings with the public, such petition, not showing that the alleged libelous report was made to a tribunal which exercised judicial or quasi-judicial powers, or even powers of a kindred nature, in the revocation of the plaintiff's licenses, did not show on its face that the publication of the defamatory report was absolutely privileged, but showed only a conditional or qualified privilege, and a cause of action was set forth in the petition. It was error for the trial court to sustain the defendants' general demurrer, the sole ground of which was that no cause of action was set forth in the petition.

*Judgment reversed. Felton, J., concurs.*

STEPHENS, P. J., dissenting. The acts of 1935 and 1937 with reference to the establishment of the State Revenue Department and the duties of the revenue commissioner, as partially contained in the Code Ann. §§ 58-701, 58-714, 58-718, 58-732, contemplate that the Revenue Commissioner of this State shall have the power and authority to issue and revoke licenses to wholesale and retail dealers of malt beverages for the sale of such beverages. While, as provided in these acts, the Revenue Commissioner can not issue such license or permit without the consent of certain designated local authorities, and upon the revocation of such permit by such local authorities the license or permit issued by the Revenue Commissioner is automatically revoked, yet the power of the commissioner to issue such license or permit, although such license or permit confers no vested right on the dealer to whom it is issued

but is only a privilege granted by the governing authorities of this State to such dealer to deal in malt beverages, necessarily involves the exercise by the commissioner of some discretionary power which he can exercise, either in granting or in refusing to grant such license or permit, after an investigation and ascertainment of facts which in his opinion would justify his action in issuing or revoking such license or permit. Any charges or representations made to the Revenue Commissioner by others against any dealer to whom a license or permit to deal in malt beverages has been issued by the commissioner, where such charges and representations are made to him for the purpose of inducing him to revoke such license or permit, are made to him as an officer of this State, and as one who has power to act in the discharge of his official duties on such information furnished to him. While the Revenue Commissioner, in so far as the duties conferred upon him by statute to issue or revoke such permits is not in a strict and technical sense a judicatory or a court, yet he has power to pass upon facts in the exercise of his duties as an officer of this State in issuing or revoking such licenses or permits. In so far as he has the power to exercise his discretion upon consideration and determination of what constitutes facts and thereby issue or revoke such licenses or permits, he is a quasi-judicial officer. In Shummway v. Warrick, 108 Neb. 652 (189 N. W. 301), it is stated: "When the law commits to any officer the duty of looking into facts and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is quasi-judicial."

Any representations as to facts, even if untrue and maliciously made, to any officer of the government for the purpose of inducing him to perform an official duty which involves the exercise by him of any discretion or action upon consideration of the representations, where such representations have some relation to or bearing upon the subject-matter of the inquiry, are absolutely privileged, and can not be the basis of a suit for libel by any person injured thereby, against the person making such representations to such officer of the government. In 3 Restatement Law of Torts, American Law Institute, § 587, it is stated as follows: "A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish false and

defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course of and as a part of a judicial proceeding in which he participates, if the matter has some relation thereto." Under subsection b of this section it is stated that this rule applies "to communications made by a client to his attorney with respect to proposed litigation as well as to information given and informal complaints made to a prosecuting attorney or other proper officer preliminary to a proposed criminal prosecution, whether or not such information is followed by a formal complaint or affidavit."

The doctrine of absolute privilege in communications, although falsely and maliciously made, to a judicial officer for the purpose of causing him to act upon a matter within his jurisdiction, and which representations are as to matters which have some relation to or bearing upon the subject-matter of the inquiry, is the recognized law of this State, notwithstanding there appears no express codification of such in the Code. In *Wilson* v. *Sullivan,* 81 *Ga.* 238 (7 S. E. 274), the court held as follows: "All charges, allegations and averments contained in regular pleadings addressed to and filed in a court of competent jurisdiction, which are pertinent and material to the redress or relief sought, whether legally sufficient to obtain it or not, are absolutely privileged. However false and malicious, they are not libelous." The following is stated in the opinion of the court in that case rendered by Chief Justice Bleckley: "On the general subject of privilege, and particularly on the absolute protection of pleadings in judicial proceedings, see Starkie on Slander, *246 et seq: Townshend on Slander and Libel, 381; Odgers on Libel and Slander, 191. Our Code, in section 2980, enumerates various instances of conditional privilege, but deals not at all with unconditional or absolute privilege. This is shown clearly by the next section, which declares that 'in every case of privileged communications, if the privilege is used merely as a cloak for venting private malice, and not bona fide in promotion of the object for which the privilege is granted, the party defamed has a right of action.' The characteristic feature of absolute, as distinguished from conditional, privilege is, that in the former the question of malice is not open; all inquiry into good faith is closed. And in testing pleadings, the marks of absolute privilege are relevancy and ma-

teriality. Where these are wanting there is no privilege, or only conditional privilege at most. The Code does not mention pleading as a class or instance of privilege, and unless it had done so, we can not suppose that it meant to change the prior law concerning it. The terms 'every case,' in the section we have quoted, are to be construed, every case of conditional privilege, that is, such privilege as the preceding section deals with.

"Generalizing the law of the matter, as we understand it, and applying the same to this case, we hold as follows: All charges, allegations and averments contained in regular pleadings addressed to and filed in a court of competent jurisdiction, which are pertinent and material to the redress or relief sought, whether legally sufficient to obtain or not, are absolutely privileged. However false and malicious, they are not libelous. This privilege rests on public policy, which allows all suitors (however bold and wicked, however virtuous and timid), to secure access to the tribunals of justice with whatever complaint, true or false, real or fictitious, they choose to present, provided only that it be such as the court whose jurisdiction is invoked has power to entertain and adjudicate. The alleged libelous matter in the present case, being contained in a bill praying for an injunction, was relevant and material; consequently, absolutely privileged."

See *Francis* v. *Wood,* 75 *Ga.* 648, in which it was held: "An affidavit made before a magistrate, charging the defendant with perjury, and made for the purpose of causing his arrest, will not furnish the basis of an action for libel, even if it be falsely and maliciously made." See also *Atlanta News Publishing Co.* v. *Medlock,* 123 *Ga.* 714, supra. It may be noted that in the petition in this case it is alleged that the plaintiff's licenses were revoked by the Revenue Commissioner "on said false and malicious report."

The petition in the present suit, which is one by D. H. Lamb against a number of defendants who are alleged as constituting an organization going by the name of Brewers & Beer Distributors Committee of Georgia, to recover of the defendants damages for an alleged libelous charge against the plaintiff contained in a written communication and representation of alleged facts made by the defendants to the Revenue Commissioner of this State concerning the plaintiff and the plaintiff's business, upon which

charges the commissioner revoked the plaintiff's license to sell beer which had been granted the plaintiff, the charge being "that D. J. Lamb, operating Lamb's Tavern, on U. S. Highway No. 1, near Augusta, in Richmond County, Georgia, had been engaged in the improper and illegal sale and distribution of alcoholic beverages in, at, on and near the premises for which the licenses above set forth were issued, and has sold alcoholic beverages by the drink, of more than 21% alcohol by volume, on, at and near the premises for which the above retail licenses were issued, and has permitted drunkenness, intoxication, vulgar and profane language in, at, on and near the premises where licenses are in effect for the sale of malt beverages and wine, and has encouraged and promoted illegal and improper relationships between girls employed on said premises and customers of the said D. J. Lamb," alleges a communication made by the defendants to a quasi-judicial officer of this State, or an officer of this State who, in the exercise of his duties, is authorized to act on the facts and data presented to him as to matters which have some relation to or bearing upon the subject-matter of the inquiry. It therefore appears from the petition that the alleged communication of the defendants, irrespective of whether it was made in good faith or bad faith, was absolutely privileged, and constituted no basis for recovery by the plaintiff of damages against the defendants based upon a libelous communication. The petition failed to set out a cause of action, and the court did not err in sustaining the general demurrer.