30803.  LAMB *v.* FEDDERWITZ *et al.*

DECIDED APRIL 3, 1945.  REHEARING DENIED APRIL 21, 1945.

*W. D. Lanier, Pierce Brothers, Perry Brannen,* for plaintiff.
*Shelby Myrick, Hitch, Morris & Harrison,* for defendants.

SUTTON, P. J.  This is an action for libel by D. J. Lamb against Henry Fedderwitz and others constituting the Brewers & Beer Distributors of Georgia, and this is its third appearance in this court.  A condensed statement of the petition, including the alleged libelous report made by the defendants to the State Revenue Commission, is set out in *Lamb* v. *Fedderwitz,* 68 *Ga. App.* 233 (22 S. E. 2d, 657), where it was held that the petition was not subject to the defendants' general demurrer; and the decision of this court was affirmed in *Fedderwitz* v. *Lamb,* 195 *Ga.* 691 (25 S. E. 2d, 414).  A statement of the defendants' pleadings is set out in the report of this case in 71 *Ga. App.* 249 (30 S. E. 2d, 436), where the judgment of the trial court was reversed on an exception to a judgment granting a nonsuit.  On the third trial in the superior court, the case was submitted to a jury, a verdict was returned for the defendants, and a judgment was entered thereon. The plaintiff made a motion for a new trial, which was overruled, and the exception here is to that judgment.

■  It was held by this court when the case was here on demurrer (68 *Ga. App.* 233, supra) that the alleged libelous report made by the defendants to the revenue commission concerning the plaintiff was not absolutely privileged, as then contended by the defendants, but that it was conditionally privileged.  The defendants then filed a plea admitting the publication of the report, but denied that it was made maliciously or with any intent to injure

the plaintiff in his person, reputation, or business, and alleged that it was made "in behalf of the defendants in the performance of a public duty, and also made in the performance of a private duty, and was also made with the bona fide intent to protect their own interests in their business and occupation in a matter in which they were concerned, and the said report and writing and the statements therein were and are therefore privileged and are not actionable." The defendants also filed a plea of justification as follows: "And for further answer and defense defendants show and say that the alleged defamatory statements set forth in the 20th paragraph of plaintiff's petition were true and that accordingly these defendants are in no wise liable to the plaintiff in damages or otherwise."

The privileged communications enumerated in the Code, § 105-709, have been held to be conditional privileges, the first three paragraphs of this section being as follows: "1. Statements made bona fide in the performance of a public duty. 2. Similar statements made in the performance of a private duty, either legal or moral. 3. Statements made with a bona fide intent on the part of the speaker, to protect his own interest in a matter where it is concerned." Section 105-710 provides: "In every case of privileged communications, if the privilege is used merely as a cloak for venting private malice, and not bona fide in promotion of the object for which the privilege is granted, the party defamed shall have a right of action." Section 105-706 is as follows: "In all actions for printed or spoken defamation, malice is inferred from the character of the charge. The existence of malice may be rebutted by proof, which in all cases shall go in mitigation of damages, and in cases of privileged communications it shall be in bar of the recovery." Whether a communication which is conditionally privileged is used with a bona fide intent to protect the speaker's or writer's own interest where it is concerned, or whether such communication is uttered maliciously is a question of fact for the jury to determine. *Nicholson* v. *Dillard,* 137 *Ga.* 225 (73 S. E. 382); *Adams* v. *Scribner,* 36 *Ga. App.* 15 (135 S. E. 110). If the alleged libelous communication was made by the defendants bona fide and without malice, as contended by them, then a finding in their favor was proper under the plea of privilege. This is true irrespective of the plea of justification, as the plea of

privilege was not waived by the plea of justification. *Wilson v. Sullivan*, 81 *Ga.* 238 (7 S. E. 274).

The evidence was substantially as follows: The plaintiff, D. J. Lamb, testified that in April, 1931, he began operating in Richmond County, Georgia, about four miles south of Augusta, a business known as Lamb's Tavern, which in 1940 consisted of a dance hall, booths, a whisky bar, kitchen, sleeping quarters and eight cabins, the value of which he estimated to be $22,000, and doing a gross business of $35,000 to $40,000 annually; that he and his 82-year-old mother and his daughter-in-law operated the place in an orderly, decent, and law-abiding manner; that he did not allow improper and immoral practices between men and women on the premises; that the State Revenue Commissioner revoked his license to sell beer and wine on March 15, 1940, on charges that Lamb's Tavern "has been engaged in the improper and illegal sale and distribution of alcoholic beverages," and "has encouraged and promoted illegal and improper relationships between girls employed on said premises and customers of the said D. J. Lamb, contrary to law and contrary to rules and regulations of the Department of Revenue," but that his license was reinstated after a period of about thirty days; that for about a year after the alleged libelous report his receipts were off about one third; that subsequent to this time he sold the place for $16,000, and moved to Chatham County. On cross-examination he admitted he had sold liquor over the counter at the tavern in violation of the law and in the presence of his women employees; that he knew it was a violation of the State law for them to sell at the bar, and that he had pleaded guilty in the city court of Richmond County, Georgia, to numerous violations of the prohibition law, and had paid fines for these violations wherein pleas of guilty were entered. He further testified: "I made the statement that I did not encourage or permit illegal or immoral relations between men and women in my cabins; never in my life have I done that. . . I never did encourage, and tried to prevent anything of the kind." He stated that he did not know Judge Wood or the investigators who came to see him. He admitted that he had appeared before Hon. A. L. Franklin, Judge of the superior courts of the Augusta circuit, in June, 1942, on an injunction proceeding in respect to allegations of a nuisance in the conduct of Lamb's Tavern, and that he gave

bond: in the sum of $1000, and had paid the sum of $300 and costs in order to reopen Lamb's Tavern.

· Counsel for the defendants introduced in evidence over the objection of counsel for the plaintiff a certified copy of the judgment of the superior court of Richmond County, dated June 13, 1942, in a proceeding instituted by the solicitor-general of the Augusta circuit against D. J. Lamb, seeking to enjoin the operation of his place of business as a lewd house, and showing that the defendant gave bond in the sum of $1000 and paid a $300 fine and costs. On redirect examination counsel for the plaintiff questioned the witness as to the injunction proceedings and as to the convictions for violations of the prohibition statute, and introduced in evidence the entire proceedings and the affidavits of a man and a woman which recited therein that on June 6, 1942, they rented a cabin at Lamb's Tavern for the purpose of illicit relations.

· The plaintiff introduced in evidence without objection an order signed by Hon. T. Grady Head, State Revenue Commissioner of the State of Georgia, dated March 14, 1940, revoking the beer and wine license of the plaintiff. L. C. Groves testified for the plaintiff that he was Director of Alcoholic Control in 1940, and at a hearing the beer and wine license of D. J. Lamb was revoked under the instructions of the attorney-general, and that about a month later the license was restored to the plaintiff. Mrs. Mary Lamb Conner, a daughter-in-law of the plaintiff, testified that she was a member of the family and that she lived at Lamb's Tavern in 1940, and that neither she nor Lamb allowed any improper moral conduct on the premises, and that she did not at any time see or hear of any illicit relations between men and women there or anything to arouse her suspicions; that a girl, Jean [Ray], who later became Lamb's daughter-in-law, and two negro employees: worked there for awhile. Lester Elliott, former president of the civil service commission of Augusta, testified that he knew the general reputation of D. J. Lamb and Lamb's Tavern, and that the reputation was good. A former deputy sheriff of Richmond County testified for the plaintiff that he was familiar with the general reputation of D. J. Lamb and Lamb's Tavern as to immoral practices there and that it was good; that he remembered in 1942 the solicitor-general of that circuit filed an injunction against Lamb and others and that counsel for the plaintiff represented Lamb in that proceeding.

Thomas J. Glancy Jr. testified for the defendants that twice in February, 1940, as an investigator for the Brewers & Beer Distributors Committee he went to Augusta to investigate the general conditions there without specific reference to any particular parties; that he investigated a number of places, one of which was Lamb's Tavern; that on the first visit D. J. Lamb was selling whisky over the bar, and two girls were working there and dancing with customers, and acting as waitresses serving sandwiches and mixed drinks. He stated: "I did not single out Mr. Lamb but went visiting other places. . . I had never seen Mr. Lamb before my first visit; I had nothing against him; I was unfamiliar with his name. As investigator for the committee I mailed my reports to Judge Wood. . . During the time I was at Mr. Lamb's the only conversation I had with reference to the matters testified about was with the little lady, Miss Jean."

Judge John S. Wood, one of the defendants, testified that he was recently re-elected as congressman from the 9th congressional district of Georgia; that he was judge of the superior courts of the Blue Ridge circuit for approximately seven years, and that he resigned to enter Congress; that after his retirement from Congress, on the organization of the Brewers & Beer Distributors Committee of Georgia in February, 1940, he was employed as chairman in the State of Georgia for the purpose of aiding local law-enforcement officers in insisting upon decent and wholesome conditions around places where beer was sold at retail, and that he conferred with the attorney-general, who made rulings as to the legality of the program; that he went to Augusta and elsewhere in the State endeavoring to explain their program; that they employed investigators who were sent to the various retailers without divulging their identity or connection and to report as to conditions found; that he had many conferences with the attorney-general as to beer and whisky licenses; that he received a report from Thomas Glancy, an investigator, as to Lamb and Lamb's Tavern, and that he wrote Lamb a letter concerning the alleged misconduct in the operation of Lamb's Tavern which was mailed in due course; that he instructed Mr. Glancy to investigate every dealer in malt beverages; that he did not know Mr. Lamb and had never heard of him until he got the report; that he had no feeling of any kind against Lamb; that when he got the report, as director

of the Brewing Industry Foundation he sent Lamb this letter in good faith.

The defendants introduced over objections of plaintiff's counsel a letter from John S. Wood, State Director of the Brewers & Beer Distributors Committee of Georgia, dated February 28, 1940, to D. J. Lamb, notifying him of the reported violations of the law in the operation of Lamb's Tavern and warning him that, if the complaints were true, he take immediate action to remedy the same. The defendants also introduced without objection a letter from John S. Wood, State director, etc., to Hon. T. Grady Head, State Revenue Commissioner, dated March 14, 1940, in which it was recited that Lamb's Tavern (and two other named retail operators) "were conducting their places in a very disorderly manner and in such a way as to reflect discredit upon the industry," and, "I, therefore, recommend and earnestly request that the retail license of each of these dealers now operating be summarily revoked."

The jury was authorized to find from the evidence that the alleged libelous report was made bona fide and without malice on the part of the defendants and that it was a privileged communication as contended by the defendants. The verdict was authorized under the law and the evidence on this feature of the case. While it is not necessary for the purpose of this decision to hold that the plea of justification was also sustained, still we are of the opinion that the evidence was sufficient to authorize such a finding. The evidence shows that, at the time of the investigation in question, intoxicating liquors were being sold illegally by the defendant at Lamb's Tavern, and that Lamb had been convicted and had paid fines in the city court of Richmond County several different times for the illegal sale of intoxicating liquors at said place of business. The witness Glancy testified as to the general setup at Lamb's Tavern, that there was a dance hall and girls to dance with the customers, and cabins around the main building for guests and customers. He testified: "I had a conversation with one of the girls with reference to getting a cabin; she said her name was Jean; I asked her what was the rental of the cabins; she told me the price was $1.25 per night, but if I wanted a woman to stay with me that would be $1 per hour; I asked her what girls were available; she said that herself and the other girl were the only two that worked there." Lamb denied that the girl was authorized to

make the statement to Glancy and said it was without his knowledge or consent. But it appears that he had this girl present at the trial and failed to put her up as a witness to deny Glancy's testimony. The verdict was authorized, and the court did not err in overruling the motion for a new trial on the general grounds. .

■ Special ground 1 of the motion complains that the court erred in permitting the defendants' counsel to question the plaintiff on cross-examination with reference to an injunction proceeding instituted against him by the solicitor-general of the Augusta circuit, in June, 1942, to abate a nuisance, known as Lamb's Tavern, in which Lamb was charged with the operation of a roadhouse wherein lewdness was practiced, and also in allowing in evidence the judgment in that proceeding wherein Lamb gave bond for $1000 under the terms of the statute and paid a fine of $300 and all costs of court, over the objections: (a) because the same referred to transactions transpiring after the alleged libel; (b) because it was irrelevant and immaterial and threw no light on the issues being tried. Lamb had testified that he had never encouraged or permitted illegal or immoral relations between men and women in his cabins, and this evidence was offered for the purpose of impeaching his testimony. The plaintiff then introduced the entire injunction proceeding to abate the nuisance, and Lamb testified about the proceeding, without objection; and also introduced another witness, the deputy sheriff, who testified about the proceeding without objection. In these circumstances no error is shown by this ground of the motion. See *Bryant* v. *Sovereign Camp W. O. W.,* 29 *Ga. App.* 359 (c), 361 (115 S. E. 285); *N. Y. Life Ins. Co.* v. *Ittner,* 62 *Ga. App.* 31 (4) (8 S. E. 2d, 582); *Moore* v. *State,* 193 *Ga.* 877 (2) (20 S. E. 2d, 403).

■ Special ground 2 of the motion contends that the court erred in allowing Thomas Glancy, a witness for the defendants, to testify as follows: "I had a conversation with one of the girls with reference to getting a cabin; she said her name was Jean; I asked her what was the rental of the cabins; she told me the price was $1.25 per night, but if I wanted a woman to stay with me that would be $1 an hour. I asked her what girls were available; she said that herself and the other girl were the only two who worked there. That was on my first visit. On February 23, 1940, I made my second visit there and observed the girls dancing with the custom-

ers and they appeared to be soliciting money for the juke box; they danced with the customers and the customers put money in the victrola for the music before they danced. I did not talk with the girl any more." This evidence was allowed over the objection that any statement made by this girl was not the statement of D. J. Lamb or any one of authority of any kind or character and that it was immaterial, irrelevant, and improper. It appears from the evidence that Glancy, as an investigator for the defendants, went to Lamb's Tavern to investigate the conditions there, and that he found this girl working there as an employee serving sandwiches and mixed drinks. His conversation with her took place in the same room where Mr. Lamb was, whether he heard it or not, and what she told him with reference to the rental of the cabins was certainly admissible to show good faith on the part of Glancy and Judge Wood acting for the defendants in making the alleged libelous communication to the revenue commission and to show that it was made without malice. The court did not err in allowing the evidence here complained of.

■ The third special ground complains of the admission in evidence of a certain letter written by Judge John S. Wood to the plaintiff on February 28, 1940, in which the plaintiff was notified of a report that had been made to Judge Wood with reference to conditions existing at Lamb's Tavern, over the objection that it had not been shown that the letter was mailed to or received by Lamb. This ground of the motion is without merit. Judge Wood testified that he or his secretary mailed the letter to D. J. Lamb; and he further testified that he was present at the hearing in Atlanta when Mr. Lamb's case came up and that the plaintiff's attorney stated that Lamb had lost this letter and asked Judge Wood for a copy of it; and he further testified that this was the only letter that he ever wrote to Lamb. Lamb did not testify positively that he did not receive the letter, but testified that he did not remember it; but he also testified that he got a letter from Judge Wood about using girls for immoral purposes, and that he gave the letter to Mr. Walsh, a newspaper reporter, and he was going to give Lamb a "write-up" and a denial; he further testified that he did not answer the letter.

■ Special ground 4 of the motion contends that the court erred in the admission of the following testimony of John S. Wood, one

of the defendants: "Before the licenses were restored I had a telephone conversation with Mr. T. Grady Head, State Revenue Commissioner. I knew and recognized his voice over the telephone; he 'phoned me that his good friend, Wilmer Lanier, was very anxious to have Mr. Lamb's license restored; that he, Head, was coming up for re-election and he wanted to help him if it would be all right to do so, to which I replied I had no objection if the place was being properly operated and in accordance with the law," over the objection that it was hearsay and not binding on the plaintiff. The record shows that the court admitted this testimony to show the good faith of Judge Wood in making the original report against Mr. Lamb, as to malice or lack of malice. We think the court properly admitted the testimony objected to, as it shows that Judge Wood had no objection to the restoration of Lamb's license to sell beer and wine, provided that his place was operated properly and in accordance with law, and tended to shed light on the issue as to whether he acted in good faith and without malice in making the alleged libelous report to the revenue commission. The Code, § 38-302, is as follows: "When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence."

■ Special grounds 5 and 6 of the motion assign error on certain excerpts from the charge of the court. We have carefully considered these exceptions, but do not think any harmful error is shown by either of them when considered in connection with the charge as a whole. The charge of the court was full and fair and was in accordance with the principles of law applicable to this case as stated by this court in 71 *Ga. App.* 249 (supra).

■ Special grounds 7, 8, 9, 10, 11, 12, 13, and 14 assign error on the failure of the court to give in charge to the jury certain timely written requests therein set out. These requests cover several typewritten pages and it is not deemed necessary to deal with them separately or specifically, but it is sufficient to say that, in our opinion, these requested charges, where applicable, were sufficiently covered in the general charge given by the court to the jury; and the court did not err in failing to give the requested charges for any reason assigned.

█ The verdict was authorized by the evidence; no harmful error of law is shown; and the court did not err in overruling the plaintiff's motion for a new trial.

*Judgment affirmed.* *Parker, J., concurs.*

FELTON, J., concurring specially. I concur in the judgment for the reason that in my opinion the evidence demanded the finding that the charges were made in good faith. This view is of course based. on the premise that the testimony of the witness Thomas Glancy, the subject-matter of the second special ground of the motion for a new trial, was admissible on the question of good faith.